EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

Jeremy Glenn Ahlum,                         ]
Mark William Emery,                         ]
James Gary Gain,                            ]
Marcos Bognar,                              ]
Andrew Skorjanc,                            ]
Paul C. Liebrecht,                          ]
Carl F. Selander, and                       ]
James Goodman,                              ]
on behalf of themselves and all             ]
others similarly situated,                  ]
                                            ]
            Plaintiffs,                      ]
                                            ]
    vs.                                     ]        Civil Action No.:  9:10cv3227-SB
                                            ]
                                            ]
Town of Ridgeland,                          ]
Ridgeland Police Department,                ]
Gary Hodges,                                ]
Richard V. Woods, and                       ]
iTraffic Safety, LLC,                       ]
                                            ]
            Defendants.                      ]

## FIRST AMENDED CLASS ACTION COMPLAINT

### I. NATURE OF THE CASE

1.    Plaintiffs bring this class action by and through their undersigned counsel of

      record, and on behalf of themselves and others similarly situated make this

      Racketeering and Civil Rights Complaint for monetary damages and

      injunctive relief against Defendants Town of Ridgeland, Gary Hodges,

      Richard V. Woods, and iTraffic Safety, LLC, for conspiring to make illegal

      and unlawful arrests for violations of a municipal ordinance for speeding,

      whereby Defendants conspired to attempt to serve alleged violators of the

1

EXHIBIT 1

municipal ordinance by direct mail and outside of their respective jurisdiction.  In furtherance of the conspiracy, Defendants committed numerous predicate acts, including but not limited to mail fraud and wire fraud.  As such, Defendants have violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*  Plaintiffs also bring claims against Defendants Town of Ridgeland and the Ridgeland Police Department under the South Carolina Tort Claims Act and common law claims against Defendant iTraffic Safety, LLC.

## II.  Parties

2.    Plaintiff Jeremy Glenn Ahlum is a citizen and resident of Greer, South Carolina.

3.    Plaintiff Mark William Emery is a citizen and resident of Dunnellon, Florida.

4.    Plaintiff James Gary Gain is a citizen and resident of Kissimmee, Florida.

5.    Plaintiff Marcos Bognar is a citizen and resident of Monmouth Junction, New Jersey.

6.    Plaintiff Andrew Skorjanc is a citizen and resident of Charlotte, North Carolina.

7.    Plaintiff Paul C. Liebrecht is a citizen and resident of Galax, Virginia.

8.    Plaintiff Carl F. Selander is a citizen and resident of Cayce, South Carolina.

9.    Plaintiff James Goodman is a citizen and resident of Tampa, Florida.

10.   Defendant Town of Ridgeland is a municipality in Jasper County, South Carolina.

11.    Defendant Ridgeland Police Department has law enforcement powers in the Town of Ridgeland, which is located in Jasper County, South Carolina.

12.    Defendant Gary Hodges is the Mayor of the Town of Ridgeland. He is being sued in both his official and individual capacities.

13.    Defendant Richard V. Woods is the Chief of Police of the Ridgeland Police Department, and upon information and belief, is a citizen of South Carolina. He is being sued in both his official and individual capacities.

14.    Defendant iTraffic, LLC, is a limited liability company organized under the laws of South Carolina.

### III. Jurisdiction and Venue

15.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331. Plaintiffs seek damages and injunctive relief for civil rights violations arising under federal law. This Court has supplemental jurisdiction over Plaintiffs common law claims as they arise out the same transaction or occurrence as the federal claims.

16.    Venue is proper in this Court as a substantial portion of the events complained of occurred in South Carolina.

17.    Beaufort is the proper division for this action pursuant to Local Civil Rule 3.01 DSC as a substantial part of the events or omissions giving rise to Plaintiffs causes of action occurred within the division.

### IV. Factual Allegations

18.    In July, 2010, the Town of Ridgeland (hereinafter "Town") began enforcing a municipal ordinance for speeding with iTraffic Safety, LLC at the direction

3

of its Mayor Gary Hodges and in collaboration with the Ridgeland Police Department.

19.    In an effort to generate revenue and under the guise of improving public safety and preventing fatalities on I-95, the Town initiated the I-95 Public Safety Program. To that end, the Town contracted with a company known as iTraffic to catch speeding drivers using a recreational vehicle stationed on the interstate which is armed with a video camera and radar.

20.    While Defendants contend that the traffic enforcement was created to promote safety, the program was truly designed to generate revenue.

21.    In order to institute the program, Defendant iTraffic (a for profit entity) invested a substantial amount of money, providing the upfront costs to institute and continue to run the program, including hiring two officers, back office administrative personnel, and providing necessary equipment.

22.    In return for its investment, Defendant iTraffic receives 50% of the town fees generated from each ticket.    According to iTraffic's Collection Agency Agreement with the Town of Ridgeland, iTraffic further reserves the exclusive right to seek payment from alleged violators who fail to post a bond or appear in court and can keep 66% of those fees. (Exhibit B).

23.    Defendant iTraffic exercises a great deal of control over the Officers who man the traffic unit.

24.    Although the officers who man the unit are now employed by the Town of Ridgeland Police Department, Defendant iTraffic dictates the number of hours the officers are to be in the traffic unit, monitors the officers' time

4

cards, and even makes decisions regarding when to deploy officers based solely upon financial considerations.

25.    William Danzell of iTraffic emailed Officers Swinehamer and Lowther on October 15, 2010, instructing each of them that they are on the clock only when they are in the unit, requesting that each of them sign a time card when they arrive and when they are deployed. The email further notes that the iTraffic 40 hour work week is determined by the number of hours deployed and that time cards will be delivered by Jason Cox from iTraffic. (Exhibit C)

26.    William Danzell of iTraffic followed up his financial expectations by email to Jason Taylor, Town of Ridgeland Administrator, dated October 18, 2010 stating,

> Just a follow-up to our lunch on Friday. We should be consistently be (sic) delivering 120 to 130 tickets to Sandy on a daily basis. The potential is 200 but further improvements are required in the backoffice to achieve this number. We are working on this…but, we are not there yet. I'll keep you posted. (Exhibit D)

27.    While the Town of Ridgeland Police Department employs the officers to work a forty hour work week, iTraffic exercises complete control regarding when to deploy the unit and when to pull an officer off duty at the last minute for financial reasons.

28.    For instance, Jason Cox of iTraffic emailed Officer Swinehamer on January 19, 2011 and stated:

> *As per our conversation this morning*, I under stand [sic] the fact that you want to work today to complete the 40 hour work week. However, *our violation volumes do not make it economically viable to deploy today*. I was informed that iTraffic is only paying for deployment hours,

5

and anything under (or over) the 40 hour work week should be taken up with the town/PD since you are a town employee. Having said that, we will not need you to deploy today. (Exhibit E)(emphasis added)

29.   By email dated January 18, 2011, Jason Cox of iTraffic told Captain Mador of the Ridgeland Police Department that he was issuing directives for 24 hour Friday-Sunday deployments, noting that Officers Dobbs and Swinehamer have agreed to work 12 hours on and 12 hours off. The email forwarded the following internal discussion among Nick Maxey, Bill Danzell and Jason Cox:

> If possible, I think we should move to 24 hour Friday-Sunday deployments. The numbers show (last weeks data) that we will get a 50% increase if we move the weekday deployment to the weekend. What's more, the data shows that we have higher speeds for evening and early morning deployments. The stats: 575 total violations for Wednesday-Sunday. Breakdown: 100 violations for weekday, and 475 for weekend. The average violation count for weekday was 50 violations per weekday (16 hour) deployment. The average for weekend deployments was 135 violations per day (16 hour) deployment; that's excluding Nelson's 3rd shift. Nelson captured 30 violations for third shift, which was the same volume as a weekday deployment, but 40% of those violations were 85+MPH; whereas, on average, 25% of the violations were 85+ for weekday deployments. (Exhibit F.)

30.   None of these directives from Jason Cox address public safety but rather suggest Defendants' motivation is to maximize profit in their police efforts.

31.   By email dated November 12, 2010, William Danzell again contacted Jason Taylor emphasizing the importance of profitability and stating, "What stands out on the November numbers is that the violations per hour have fallen to

the (sic) 10 violations per hour.  And, each deployment is not getting 16 roadside hours per shift."  (Exhibit G)

32.    Despite Mayor Hodges' representations early on that the system was working given the reduction in the number of violations, internal discussions were brewing concerning disappointment in the number of tickets generated.

33.     On December 1, 2010 William Danzell contacted Jason Taylor to again express his concern for profitability stating:

> Please look at the number of deployed officer hours. Our goal is to have 160 deployed hours in a week and 640 deployed hours a month.  In October we employed the officers 528 hours; and, in November we employed them for 471 hours.  If these numbers are good numbers, then I have a couple of concerns:
>
> 1)The trend is not good; and
> 2) Our November deployed hours is (sic) about 26% lower than the 640 hours a month we subscribe to. Please check your records to see if the Officer time sheets match these numbers; and if not, accounting will need to be brought into the loop to make the necessary adjustments to the iTraffic bill.  (Exhibit H)

34.    Under the program, an officer is stationed on the side of the road in a motor home equipped with radar and camera.  An officer monitors the cameras, which will take a picture of the alleged speeding driver and the driver's license tag if the driver is driving 11mph or more over the posted state speed limit of 70mph.[1]

---

[1] Although the speed limit is posted at 70mph based upon state law, Defendants state that they only issue tickets for violations exceeding 80mph.

35.   The traffic enforcement system actually creates additional danger due to the placement of the traffic control vehicle and the blinding flash of light used to take a photograph of prospective and alleged violators.

36.   Based on the testimony of Defendant Gary Hodges at a South Carolina Senate Subcommittee Hearing in January, 2011, the speeding enforcement is fully automated, and the monitoring officer does not make decisions on which vehicles to photograph.

37.   Upon information and belief, when on duty, the officers exclusively rely upon the iTraffic system even if they witness an excessive speeder.

38.   Defendant Hodges further testified at that same Senate Subcommitte Hearing that the photographs of the vehicle tag and driver are submitted to Defendant iTraffic for review and cross-referencing with DMV databases to make a match between the photograph of the driver and registered drivers in the same household.   No officer or employee of the Ridgeland Police Department makes the decision of whether a driver matches a registered driver in the household.  Instead, that decision is left to iTraffic who earns a minimum of $24.50 for each ticket that is paid by an alleged violator.

39.   Defendant Hodges further testified that each traffic ticket is automatically generated on a South Carolina Uniform Traffic Ticket, and not on an ordinance summons.

40.   The officer does not initiate a traffic stop and does not personally serve the driver within the officer's jurisdiction pursuant to S.C. Code Ann. § 5-7-110.

41.    Several days later, the Ridgeland Police Department sends a letter under the signature of Richard Woods, to the driver along with a State of South Carolina Uniform Traffic Ticket.  Although the letter is signed by Richard Woods, the Chief of Police, the ticket has the electronic name of another officer printed on it.  Moreover, Defendant Hodges testified that the tickets are mailed from the town hall, meaning that the officer does not even personally mail the ticket to the alleged violator.

42.    The letter informs the driver that he or she has violated a town ordinance regarding speeding and that he or she must pay a fine.  The letter falsely states that because the driver has violated a town ordinance, the citation will not affect the driver's driving record. This statement is in material conflict with the statement on the ticket states that "If you fail to post bond or personally appear in court on the assigned date, your home state's Motor Vehicle Division will be notified to suspend your license until you have cleared this matter with the trial court."  The letter does state, however, that if the driver fails to appear in court, the Town of Ridgeland may issue a bench warrant for the driver's arrest or take action to suspend the driver's license.

43.    Defendant Hodges justified the mailing of traffic tickets to alleged violators in a letter that appears to be a press release, dated August 30, 2010:

> We understand that mailing a traffic ticket is not the standard practice, however, using the U.S. Mail is supported by case law.  The Department of Motor Vehicles permits the suspension of drivers license by mail. Subpoenas are sent by mail.  Multi-million dollar lawsuits are processed by mail and the list goes on and on.  If it is not permissible for justice to be administered via U.S. Mail,

9

then South Carolina's legal system would shut down.
(Exhibit I.)

44. Defendant Hodges letter to his constituents in this regard is completely erroneous, as lawsuits must be served on individuals personally in both state and federal courts and must be served personally or via certified mail to registered agents for service of process. Likewise, subpoenas must be served in the same manner as service of process in federal and state courts. Even with these rules in place, the South Carolina legal system remains operational.

45. The Town's jurisdiction is only related to a seven mile stretch of I-95. Most drivers ticketed for speeding are traveling from out of state and simply pay the fine to avoid the hassle of traveling back to South Carolina to attend traffic court. The amount of the fine ranges from $100.00 to $300.00.

46. According to the the testimony of Defendant Hodges, approximately 8000 citations have been processed in the past 5 months. This materially conflicts with statements made by iTraffic in a presentation to the Newport, Tennessee city council where the iTraffic representative stated that the Ridgeland Police Department was issuing 1500 violations weekly.

47. At fines ranging from $100-$300, this is an extremely profitable way for the Town to generate revenue, especially considering the fact that the majority of people stopped are traveling through South Carolina to an out of state destination and will likely pay the fine to avoid traffic court likely due to the fact that the expense of returning to Ridgeland to contest the illegal ticket far exceeds the cost of simply paying the fine.

48.    iTraffic pays the salary of the Town's two traffic officers and dictates when and whether the officers will be deployed; in return the Town of Ridgeland splits the profits from the traffic tickets with iTraffic.

49.    While the letter sent under the signature of Richard Woods states that the Ticket, if fully paid, will not appear on a person's driving record, Woods letter threatens to initiate action to suspend the driver's license if the bond amount is not paid and the driver fails to attend Court on the date specified on the ticket even though Defendants know they do not have jurisdiction to issue the ticket outside of Jasper County and know they are attempting to collect an unlawful debt.

50.    While Woods letter states that the violation will not appear on the person's driving record, the South Carolina Uniform Traffic Ticket informs the person that the failure to post bond or appear in court will result in notification of the person's home state Motor Vehicle Division for action to suspend the person's driver's license.

51.    Based on the testimony of Hodges to the Senate Subcommittee, the ticket is not written by the officer.  However, each time a ticket is mailed with an officer's name on it and mailed to an alleged violator, the ticket has been falsified by one or more Defendants, as the ticket notes the date of arrest is the same as the date of the violation, notwithstanding that Defendants know that the ticket will neither be mailed nor received until well after the date of the offense.  In fact, Defendants own website makes a contrary statement,

11

confirming that "It could take up to one week to process and mail a South Carolina Uniform Traffic Citation."

52.     The Ridgeland Police Department issues South Carolina Uniform Traffic Tickets via United States Mail knowing that such service is improper to effectuate an arrest.

53.     No where does Woods' letter or the alleged arresting officer state that the mailing of the letter is not proper service of a traffic ticket or that the officers are exceeding their territorial jurisdiction when attempting to serve the ticket on a driver outside of Jasper County.

54.     Upon information and belief, if an alleged violator appears and attempts to contest the ticket it is dismissed solely to allow the Defendants to continue to operate their scheme.

55.     Defendant Hodges testified that if the alleged violator does not attend the trial as scheduled on the traffic ticket, a trial does not take place that day in the person's absence.  Instead, Defendant Hodges testified before the South Carolina Senate Subcommittee that Ridgeland then sends the ticket via registered mail to the alleged violator.  Defendant Hodges did not say what happened if the registered mail is refused, including whether Defendants will proceed with a trial in absence, seek a bench warrant, or seek to notify the home state's Department of Motor Vehicles of the alleged offense.

56.     In response to a FOIA request, the Town of Ridgeland supplied what appears to be the purported second letter, which does not come from the Ridgeland Police Department.  Rather it comes from the municipal court under the

signature of the Clerk of Court, Sandy Hall.  The letter is reproduced as follows:

### SECOND NOTICE AND FINAL NOTICE

### OF I-95 SPEEDING VIOLATION PRIOR TO

### DRIVER'S LICENSE SUSPENSION FILING

Payment for a South Carolina Uniform Traffic Ticket recently issued to you has not been received by the required date nor did you appear in traffic court as scheduled.  Your non-payment of a speeding violation is a serious offense and may result in:

1.    A bench warrant for your arrest; and/or,
2.    Suspension of your driver's license.

The Municipal Court will prosecute you to the fullest extent permitted by law for non-payment.

Payment must be received no later than Five (5) business days from the date of this letter to stop further action from being taken by the Court for collection of the fine. (Exhibit  J.)

57.    Shockingly, the Municipal Court sends the second notice and apparently does not notify the individual of a rescheduled trial and threatens criminal prosecution, even though the South Carolina Supreme Court has emphatically said that municipal judges and magistrate judges cannot prosecute offenses and cannot issue bench warrants of their own accord and must respond to appropriate prosecutions by law enforcement.  In The Matter Of Newberry County Magistrate Mark E. English, 367 S.C. 297, 625 S.E.2d 919 (2006).

58.    The Town of  Ridgeland also entered into a Collection Agency Agreement with iTraffic, whereby iTraffic would be responsible to collect fines that have

not been paid. The Town of Ridgeland agreed to pay iTraffic 66% of the fines collected doring this part of the program. (Exhibit B.)

59.    In what might be the most troubling aspect of the program, the officers routinely issue tickets without probable cause, as they are not the individuals matching photographs and driver information, as that is delegated to iTraffic. The officers do not get affidavits from the iTraffic personnel or review photographs of Drivers' Licenses to match evidence collected from the highway.

60.    Moreover, Defendants recognize that issuance of tickets are without probable cause. According to the Town's website, even if the ticket is issued to a person who was not driving the vehicle at the time the iTraffic unit photographed the alleged speeding violation, that person must pay the ticket or appear in Court.

61.    Shockingly, Defendants will not dismiss the ticket when they issue one that does not match the driver of the vehicle, insisting that the alleged violator prove his or her innocence and also prove who actually was driving the vehicle. On its website, the Town states:

> You may also mail a copy of the driver's license of the driver of the violating vehicle along with a copy of your license to the Town of Ridgeland, I-95 Public Safety Program, P.O. Box 1119, Ridgeland, SC 29936. Please enclose enlarged clear copies of yours and the violator's driver licenses and your day time telephone number. Please call (843) 726-9000 with any question about the identity of the violator.

62.    The above statement is telling and provides evidence that Defendants issue tickets without probable cause because if they were properly matching

14

photographs of driver's licenses with the photographic evidence retrieved from the mobile home unit, Defendants would have no need to request the ticketed individual to send in his or her driver's license. Defendants would already have a copy of the ticketed individual's driver's license.

63.     Moreover, asking that the driver's licenses be enlarged evidences some question by the Defendants of the ability to match conventional driver's license photographs with the photographic evidence collected from the interstate mobile home.

### IV.  Plaintiff Jeremy Glenn Ahlum

64.     Plaintiff Ahlum was allegedly photographed by the iTraffic unit on October 22, 2010 and was alleged to have been traveling 82 miles per hour in a 70 miles per hour speed zone.

65.     Officer B. Dobbs issued a ticket noting an arrest date of October 22, 2010, although the ticket was not mailed to Plaintiff Ahlum until several days later. (Attached to the Complaint as Exhibit A is a redacted version of Plaintiff Ahlum's cover letter and ticket). Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

66.     At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Ahlum was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Ahlum or with Plaintiff Ahlum himself.

67.   On information and belief, Officer B. Dobbs never mailed Plaintiff Ahlum the ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

68.   Plaintiff Ahlum was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

69.   Plaintiff Ahlum posted the $133.00 bond amount.  The bond was forfeited on December 6, 2010 even though upon information and belief Officer Dobbs did not establish the necessary requirement to try Plaintiff Ahlum in his absence as neither Officer Dobbs nor Defendant Woods proved on the record that he served Plaintiff Ahlum the traffic ticket within Officer Dobb's  or Defendant Woods's jurisdiction.

70.   Moreover, the traffic ticket was not countersigned by a deputy in Greenville County where the traffic ticket was sent.

### V. Plaintiff Mark William Emery

71.   Plaintiff Emery was allegedly photographed by the iTraffic unit on November 11, 2010 and was alleged to have been traveling 86 miles per hour in a 70 miles per hour speed zone.

72.   Officer D.R. Swinehamer issued a ticket noting an arrest date of November 11, 2010, although the ticket was not mailed to Plaintiff Emery until several days later.   Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

16

73.    At the time the ticket was issued, the Ridgeland Police Department did not
       have probable cause to believe Plaintiff Emery was driving the vehicle since
       no employee of the Ridgeland Police Department attempted to match
       photographs of the alleged violation with known photographs of Plaintiff
       Emery or with Plaintiff Emery himself.

74.    On information and belief, Officer D.R. Swinehamer never mailed Plaintiff
       Emery the ticket and instead the ticket was mailed under a cover letter from
       Defendant Woods several days after the alleged violation.

75.    Plaintiff Emery was charged with a municipal ordinance violation, although
       the charging document was a South Carolina Uniform Traffic Ticket and not
       an ordinance summons.

76.    Plaintiff Emery posted the $133.00 bond amount.  The bond was forfeited on
       December 15, 2010 even though upon information and belief Officer
       Swinehamer did not establish the necessary requirement to try Plaintiff
       Emery in his absence as neither Officer Swinehamer nor Defendant Woods
       proved on the record that he served Plaintiff Emery the traffic ticket within
       OfficerSwinehamer's  or Defendant Woods's jurisdiction.

77.    Moreover, the traffic ticket was not countersigned by a deputy in Florida
       where the traffic ticket was sent.

### VI.  Plaintiff James Gary Gain

78.    Plaintiff Gain was allegedly photographed by the iTraffic unit on November
       7, 2010 and was alleged to have been traveling 81 miles per hour in a 70
       miles per hour speed zone.

17

79. Officer J. Lowther issued a ticket noting an arrest date of November 11, 2010, although the ticket was not mailed to Plaintiff Gain until several days later. Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

80. At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Gain was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Gain or with Plaintiff Gain himself.

81. On information and belief, Officer J. Lowther never mailed Plaintiff Gain ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

82. Plaintiff Gain was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

83. Plaintiff Gain posted the $133.00 bond amount. The bond was forfeited on December 15, 2010 even though upon information and belief Defendant Lowther did not establish the necessary requirement to try Plaintiff Gain in his absence as neither Officer Lowther nor Defendant Woods proved on the record that he served Plaintiff Gain the traffic ticket within Officer Lowther's or Defendant Woods's jurisdiction.

84. Moreover, the traffic ticket was not countersigned by a deputy in Florida where the traffic ticket was sent.

## VII.  Plaintiff Marcos Bognar

85.    Plaintiff Bognar was allegedly photographed by the iTraffic unit on November 20, 2010 and was alleged to have been traveling 82 miles per hour in a 70 miles per hour speed zone.

86.    Officer D.R. Swinehamer issued a ticket noting an arrest date of November 20, 2010, although the ticket was not mailed to Plaintiff Bognar until several days later.   Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

87.    At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Bognar was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Bognar or with Plaintiff Bognar himself.

88.    On information and belief, Officer D.R. Swinehamer never mailed Plaintiff Bognar the ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

89.    Plaintiff Bognar was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

90.    Moreover, the traffic ticket was not countersigned by a deputy in New Jersey where the traffic ticket was sent.

91.  Plaintiff Bognar retained counsel and requested a jury trial on this matter. He awaits a trial by jury but has already incurred damages by having to deal with the matter and retain counsel.

### VIII.  Plaintiff Andrew Skorjanc

92.  Plaintiff Skorjanc was allegedly photographed by the iTraffic unit on November 23, 2010 and was alleged to have been traveling 81 miles per hour in a 70 miles per hour speed zone. Plaintiff Skorjanc was also allegedly photographed by the iTraffic unit on November 27, 2010 and was alleged to have been traveling 84 miles per hour in a 70 miles per hour speed zone.

93.  Officer D.R. Swinehamer issued two tickets noting arrest dates of November 23, 2010 and November 27, 2010, although the tickets were not mailed to Plaintiff Skorjanc until several days later. Defendants falsified the dates of arrest on the traffic tickets knowing that they would not be mailed or received until several days later.

94.  At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Skorjanc was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Skorjanc or with Plaintiff Skorjanc himself.

95.  On information and belief, Officer D.R. Swinehamer never mailed Plaintiff Skorjanc the tickets and instead the tickets were mailed under a cover letter from Defendant Woods several days after the alleged violation.

96.    Plaintiff Skorjanc was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

97.    Moreover, the traffic ticket was not countersigned by a deputy in North Carolina where the traffic ticket was sent.

98.    Plaintiff Skorjanc retained counsel and requested jury trials on these matters. He awaits a trial by jury but has already incurred damages by having to deal with the matter and retain counsel.

### IX.  Plaintiff Paul Liebrecht

99.    Plaintiff Liebrecht was allegedly photographed by the iTraffic unit on November 19, 2010 and was alleged to have been traveling 81 miles per hour in a 70 miles per hour speed zone.

100.   Officer J. Lowther issued a ticket noting an arrest date of November 19, 2010, although the ticket was not mailed to Plaintiff Liebrecht until several days later.   Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

101.   At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Liebrecht was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Liebrecht or with Plaintiff Liebrecht himself.  In fact, if Defendants would have tried to match any photographs or biographical information, Defendants

would have known that they would have mailed the ticket to the wrong person.

102.    On information and belief, Officer J. Lowther never mailed Plaintiff Liebrecht the ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

103.    Plaintiff Liebrecht was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

104.    Moreover, the traffic ticket was not countersigned by a deputy in Virginia where the traffic ticket was sent.

105.    Plaintiff Liebrecht never received the ticket until well after his court date passed.  Fortunately, his spouse, acting on his behalf, retained counsel who requested a jury trial on this matter.  He awaits a trial by jury but has already incurred damages by having to deal with the matter and retain counsel.

### X.  Plaintiff Carl Selander

106.    Plaintiff Selander was allegedly photographed by the iTraffic unit on February 6, 2011 and was alleged to have been traveling 82 miles per hour in a 70 miles per hour speed zone.

107.    Officer D.R. Swinehamer issued a ticket noting an arrest date of February 6, 2011, although the ticket was not mailed to Plaintiff Selander until several days later.   Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

108. At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Selander was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Selander or with Plaintiff Selander himself.

109. On information and belief, Officer D.R. Swinehamer never mailed Plaintiff Selander the ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

110. Plaintiff Selander was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

111. Moreover, the traffic ticket was not countersigned by a deputy in Lexington County, South Carolina where the traffic ticket was sent.

112. Plaintiff Selander retained counsel to make a special appearance to challenge service of process and contest the constitutionality of the arrest.

113. On March 7, 2011, Plaintiff Selander's counsel made a special appearance to challenge personal jurisdiction and service. At the motion hearing, the judge suggested at Plaintiff Selander's trial in his absence that Officer Swinehamer could call Plaintiff Selander's counsel to prove notice, notwithstanding the fact that Plaintiff Selander did not waive attorney-client privilege.

114. Officer Swinehamer ultimately moved to dismiss the ticket against Mr. Selander because Officer Swinehamer stated that two tickets were issued to different people with the same violation number. The municipal court

23

declined to rule on Plaintiff Selander's Motion to Dismiss and granted Officer Swinehamer's Motion to Dismiss.

115.    Upon information and belief, Plaintiff Seleander's ticket was dismissed on Officer Swinehamer's motion to preclude Plaintiff's counsel from challenging the ticket and to ultimately allow the Defendants to continue to operate their money making scheme.

## XI.  James Goodman

116.    Plaintiff Goodman was allegedly photographed by the iTraffic unit on November 23, 2010 and was alleged to have been traveling 83 miles per hour in a 70 miles per hour speed zone.

117.    Officer D.R. Swinehamer issued a ticket noting an arrest date of November 23, 2010, although the ticket was not mailed to Plaintiff Goodman until several days later.  Defendants falsified the date of arrest on the traffic ticket knowing that it would not be mailed or received until several days later.

118.    At the time the ticket was issued, the Ridgeland Police Department did not have probable cause to believe Plaintiff Goodman was driving the vehicle since no employee of the Ridgeland Police Department attempted to match photographs of the alleged violation with known photographs of Plaintiff Goodman or with Plaintiff Goodman himself.

119.    On information and belief, Officer D.R. Swinehamer never mailed Plaintiff Goodman the ticket and instead the ticket was mailed under a cover letter from Defendant Woods several days after the alleged violation.

24

120. Plaintiff Goodman was charged with a municipal ordinance violation, although the charging document was a South Carolina Uniform Traffic Ticket and not an ordinance summons.

121. Moreover, the traffic ticket was not countersigned by a deputy in Tampa, Florida where the traffic ticket was sent.

122. Plaintiff Goodman retained counsel to appear at his January 3, 2011 trial and submitted to the municipal court a waiver of presence through his attorney.

123. Upon submission of the waiver of presence, Officer Swinehamer moved to dismiss the action, stating that without the Plaintiff Goodman present, he could not identify Plaintiff Goodman as the violator and could not question Plaintiff Goodman.

124. Officer Swinehamer's statement demonstrated a misunderstanding of the Fifth Amendment privilege against self-incrimination. Notwithstanding that misunderstanding, Officer Swinehamer's statement was an admission that he lacked probable cause when he issued the ticket because he could not identify Plaintiff Goodman.

125. Upon information and belief, Plaintiff Goodman's case was dismissed to preclude Plaintiff's counsel from challenging the legality of the ticket and to allow the Defendants to continue to operate their money making scheme.

## XII.  RICO Allegations

### The I-95 Speed Trap Enterprise

126. Plaintiffs, the class members, and Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

25

127.    Based upon Plaintiffs' current knowledge, the following persons constitute a group of persons associated in fact that Plaitniffs refer to as the "I-95 Speed Trap Enterprise":  (1) Gary Hodges; (2) Richard V. Woods; and (3) iTraffic Safety, LLC.

128.    The I-Traffic Speed Trap Enterprise is an ongoing organization that engages in, and whose activities affect, interstate commerce.

129.    While Defendants participated in and are part of the I-95 Speed Trap Enterprise, they also have an existence separate and apart from the enterprise.

130.    The members of the I-95 Speed Trap Enterprise act with a common purpose of increasing revenue through improper and unconstitutional enforcement of a municipal violation to increase the profits received by Defendants.

131.    The I-95 Speed Trap Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants have engaged in.   The primary decision-maker within the enterprise is Gary Hodges who directs the activities of the enterprise; iTraffic is tasked with implementation and works in conjunction with Defendant Woods to carry out the scheme.

132.    The Defendants control and operate the I-95 Speed Trap Enterprise through a variety of means, including, but not limited to, the following:

a)  by investing funds to develop and implement the technology for the illegal speed traffic enforcement;

b)  by providing dedicated officers  and equipment to staff the mobile traffic unit;

c)  by controlling the scheduling of the officers and unit deployment to ensure a maximum number of tickets are issued;

d)  by providing private staff to complete administrative work on tickets so the officers do not have to investigate their own tickets;

e)  by splitting the profits received from the tickets;

f)  by making false statements in the issuance of tickets; and

g)  by issuing tickets without probable cause.

### Predicate Acts

### Mail Fraud, Wire Fraud, and Collection of An Unlawful Debt

133.  Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth below, Defendants have engaged, and continue to engage, in violating each of these laws to effectuate their scheme.

134.  For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants Hodges, Woods, and iTraffic, in violation of 18 U.S.C. § 1341, caused matter and things to be delivered by the Postal Service.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of the mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

135. Defendants carried out their scheme in different states and could not have done so unless they used the Postal Service or private or commercial interstate carriers.

136. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations, or promises, Defendants Hodges, Woods, and iTraffic, in violation of 18 U.S.C. § 1343, transmitted, caused to be transmitted and/or received by means of wire communication in interstate commerce, various writings, signs, and signals. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

137. The matter and things sent by the Defendants via the Postal Service or private commercial carrier or other interstate media include, *inter alia*:

    a) Website materials that intentionally misled Plaintiffs and Class Members regarding the legality of the tickets and the consequences of failing to pay the tickets;

    b) Correspondence that intentionally misled Plaintiffs and Class Members regarding the consequences of paying the fine for the ticket or failing to pay the fine for the ticket;

    c) Correspondence that intentionally provided different statements regarding the collateral consequences of the ticket;

d)  The ticket that made materially false representations regarding the date of the arrest;

e)  Correspondence that failed to disclose Defendants' illegal scheme and intent to generate profits through unconstitutional arrests.

138.  Other matters and things sent through or received from the Postal Service, private or commercial carrier or interstate wire transmission by Defendants included information or communications in furtherance of, or necessary to effectuate the scheme, including fines paid by wire transfer, mail, or common carrier.  These payments were the result of Defendants attempt to collect unlawful debts, which also constitute predicate acts under RICO.

139.  Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the Class and obtaining their property for Defendants' gain.

140.  The dismissal of Plaintiff Goodman's and Selander's claims further evidence and intent to avoid legal challenge and to enable them to continue to operate the scheme.

141.  Defendants either knew or recklessly disregard the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the Class relied on the misrepresentations and omissions set forth above.

142.  As a result of Defendants' fraudulent scheme, Defendants have obtained money and property belonging to Plaintiffs and Class Members, and Plaintiffs and the Class have been injured in their business or property by the

Defendants' overt acts of mail fraud, wire fraud, and collection of unlawful debts.

## Pattern of Racketeering Activity

143. Defendants did knowingly, willfully, and unlawfully conduct or participate in the affairs of the I-95 Speed Trap Enterprise through a "pattern of racketeering activity," within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of Defendant iTraffic Safety, LLC.

144. Defendants committed or aided and abetted in the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§ 1341, 1343, 1956 and 1957 and collection of unlawful debt as described above, within the past ten years. In fact, Defendants have committed several thousand acts of racketeering activity. The acts of racketeering were not isolated, but rather had the same or similar purposes, participants, method of commission, and victims, including Plaintiffs and Class Members.

145. The multiple acts of racketeering activity which Defendants committed and/or conspired to aid and abet or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## XIII.  Class Action Allegations

146. This case is brought as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The proposed classes would be defined as follows:

> All persons who were sent a State of South Carolina Uniform Traffic Ticket in the mail for violation of town ordinance from Ridgeland Police Department for speeding on I-95. Excluded from this class definition are individuals whose mailing address is within Jasper County, South Carolina.

147. Plaintiffs believe that the class is comprised of several thousand drivers who received a State of South Carolina Uniform Traffic Ticket from the Ridgeland Police Department. The joinder of all drivers in one lawsuit is impracticable, and the disposition of claims in this transaction will provide a substantial benefit both to the parties and to the Court.

148. Plaintiffs are entitled to have this cause of action maintained as a class action pursuant to Rule 23 for the following non-exclusive reasons:

a) The persons constituting the class are so numerous that individual joinder of all parties is impracticable;

b) Common questions of law and fact exist between the class representatives and the unnamed members of the Plaintiff class;

c) The class representative's claims are typical of the claims of the class;

d) The Defendants' defenses against the class representatives, to the extent any will be asserted, are typical of the claims of the class;

e)  The named Plaintiffs are representative of the Plaintiff class and members of the Plaintiff class are so situated as to provide adequate representation for the unnamed Plaintiff class members;

f)  The case is primarily for injunctive relief and monetary relief is incidental to the injunctive relief sought;

g)  The common questions of law and fact involved in this matter predominate over questions affecting other class members; and

h)  The prosecution of separate actions by Plaintiff class members will create serious risk of inconsistent or varying adjudications that may prejudicially affect the claims of other class members in subsequent litigation.

149. The class action is a superior procedural vehicle for this litigation because the primary objective of the class action, economies of time, effort, and expense, will be achieved and the class action may be more easily managed than some other procedural vehicle considering the opportunity to afford reasonable notice of significant phases of the litigation, including, *inter alia*, discovery to the Plaintiff class members and the Defendants.

150. The named Plaintiffs' damages are not substantially different from the damages of other members of the Plaintiff class.  The Plaintiffs will fully and adequately protect the interests of the other members of the Plaintiff class who are too numerous to be named individually and to individually appear in this proceeding.

151. There is a well-defined community of interest and the questions of law and fact affecting the parties to be represented.

152.   The claims or defenses of the representative parties are typical of the claims or defenses applicable to the entire class.

153.   The Plaintiffs have retained counsel competent in the prosecution of this type of litigation.

154.   The questions of law and fact applicable to the entire Plaintiff class predominate over questions that affect class members, including the following issues:

a)   Whether a municipal court has jurisdiction over a driver if the driver was served with the ticket via United States Mail;

b)   Whether personal service is required for a municipal violation;

c)   Whether a municipal officer may arrest an individual with the service of a State of South Carolina Uniform Traffic Ticket outside of the municipality that is the officer's jurisdiction;

d)   Whether a municipal officer may arrest an individual with the service of a State of South Carolina Uniform Traffic Ticket outside of the county in which the municipality exists;

e)   Whether Defendants Woods and the Town of Ridgeland Police Department issue State of South Carolina Uniform Traffic Tickets without possessing probable cause to believe the person named on the ticket committed a traffic violation;

f)   Whether the false statements made on the South Carolina Uniform Traffic Ticket that is mailed to alleged violators constitutes mail fraud;

g) Whether the false statements made on the letter from Defendant Woods that is mailed to alleged violators constitutes mail fraud;

h) Whether the false statements on the Town's website constitutes wire fraud;

i) Whether Defendants conspired to collect unlawful debts and conspired to use the mails and wires to collect said unlawful debts;

j) Whether the issuance of the State of South Carolina Uniform Traffic Ticket by mail outside of the officer's jurisdiction is an unconstitutional arrest; and

k) Whether Defendants' procedures for issuance of tickets, collection, and forfeiture of bond constitute a due process violation.

155. Because of the size of some of the individual class member claims, few, if any, class members could afford to seek legal action for the wrongs complained of herein.

156. The Plaintiffs and the class alleged that Defendants conspired to violate their civil rights to issue and improperly serve illegal State of South Carolina Uniform Traffic Tickets primarily for the purpose to generate revenue for the Town.

157. The Plaintiffs and the class have suffered damages as a result of the Defendants' civil rights violations, resulting in improper forfeiture of bond and costs associated with court procedures.

### FOR A FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief Against All Defendants)

158. Plaintiffs repeat and reallege paragraphs 18 - 157 as if fully restated herein.

159. Defendants' operation of the I-95 Public Safety Program relies on unauthorized mail service on Plaintiffs and Class Members to locations outside of Jasper County and outside of Defendants' jurisdiction, making the arrests and collection of fines and bonds through bond forfeitures unconstitutional.

160. Defendants Town of Ridgeland Police Department and Woods further improperly mail tickets to Plaintiffs and Class Members without probable cause to believe Plaintiffs and Class Members are actually the drivers of the vehicles that allegedly were clocked speeding.

161. Plaintiffs and Class Members are at risk for future harm if Defendants are not enjoined from such conduct.

162. Moreover, the flash of light used to photograph Plaintiffs and Class Members puts Plaintiffs and Class Members at an unreasonable risk of losing control of their vehicles, resulting in an accident.  As a result, the operation of the I-95 Public Safety Program is a public safety risk and should be enjoined.

163. Accordingly, Plaintiffs are entitled to a permanent injunction.

**FOR A SECONDCAUSE OF ACTION**
**(Violation of Civil Rights for Deprivation of Property Without**
**Due Process of Law Pursuant to 42 U.S.C. § 1983**
**against All Defendants)**

164. Plaintiffs repeat and reallege paragraphs 18 - 163 as if fully restated herein.

165. Defendants acted under color of state law at all times relevant to this Complaint and are being sued in their individual capacities for monetary damages.  Specifically, Defendant iTraffic Safety acted under color of state

35

law in conjunction with the remaining Defendants under the guise of law enforcement through the authority and power of traffic enforcement given to it by the Town of Ridgeland and the Ridgeland Police Department,

166.   Defendants Town of Ridgeland Police Department and Woods issued tickets to Plaintiffs and Class Members without probable cause to believe that Plaintiffs and Class Members committed any offense.

167.   Defendants Town of Ridgeland Police Department and Woods issued tickets to Plaintiffs and Class Members outside of their territorial jurisdiction, making the non-custodial arrest unlawful.

168.   Defendants have collected fines from Plaintiffs and Class Members without jurisdiction over the Plaintiffs and Class Members because service of process was defective.

169.   Defendants have collected fines from Plaintiffs and Class Members without jurisdiction over the Plaintiffs because Defendants Woods and Town of Ridgeland Police Department have not provided Plaintiffs and Class Members with proper notice of the violation and date and time of the hearing due to the lack of personal service within Defendant Woods's and the Town of Ridgeland Police Department's jurisdiction.

170.   Defendants also have subjected to Plaintiffs and Class Members to the criminal process, even though service of process and notice was defective, causing injury in the form of attorneys' fees and time spent to address the allegations.

171.  Defendants also violated Plaintiffs and Class Members due process rights by making materially false statements to secure Traffic Tickets, causing Plaintiffs and Class Members to be improperly subjected to criminal process and collection of fines and bonds.

172.  As a result, improperly subjecting Plaintiffs and Class Members to the criminal process and the collection of fines and bonds from Plaintiffs and Class Members for South Carolina Uniform Traffic Tickets without properly noticed trials constituted deprivation of property from Plaintiffs and Class Members in violation of the Fifth, and Fourteenth Amendments.

173.  Plaintiffs and Class Members have been damaged as a result of the illegal arrests.

**FOR A THIRD CAUSE OF ACTION**
**(Violation of Civil Rights for Illegal Arrest Pursuant**
**to 42 U.S.C. § 1983 against Defendants**
**Ridgeland Police Department, and Woods)**

174.  Plaintiffs repeat and reallege paragraphs 18 - 173 as if fully restated herein.

175.  Defendants acted under color of state law at all times relevant to this Complaint and are being sued in their individual capacities for monetary damages.

176.  In their individual capacities and acting under color of state law, Defendants have attempted to effect illegal arrests of Plaintiffs and class members by improperly serving Plaintiffs with traffic tickets outside of their jurisdiction and by improper service methods.

177.   Moreover, the statements made by Defendants pursuant to the traffic tickets were materially false and without probable cause.

178.    Defendants have illegally arrested Plaintiffs and Class Members through the following violations:

    a)  Arresting Plaintiffs and Class Members without probable cause by issuing the ticket without appropriate evidence matching the person served with appropriate evidence from the scene of the alleged violation.

    b)  Attempting to serve Plaintiffs and Class Members South Carolina Uniform Traffic Tickets for municipal violations by mail where there is no legal authority for same;

    c)  Attempting to serve Plaintiffs and Class Members South Carolina Uniform Traffic Tickets for municipal violations at locations outside of Defendants' jurisdiction and authority pursuant to S.C. Code Ann. § 5-7-110;

    d)  Attempting to serve Plaintiffs and Class Members South Carolina Uniform Traffic Tickets for municipal violations where the only evidence for prosecution was photographic evidence; and

    e)  Attempting to serve Plaintiffs and Class Members South Carolina Uniform Traffic Tickets where Defendants lacked probable cause to believe Plaintiffs and Class Members committed any offense.

179.    Defendants knew attempting to serve South Carolina Uniform Traffic Tickets for municipal violations was not legally authorized under S.C. Code Ann. § 56-7-10.

180.    As a result, the attempted service of the South Carolina Uniform Traffic Tickets constituted illegal arrests of Plaintiffs and Class Members and constitute violations of the Fourteenth Amendments.

181.    Plaintiffs and Class Members have been damaged as a result of the illegal arrests.

## FOR A FOURTH CAUSE OF ACTION
### (Civil Conspiracy as to the Town of Ridgeland, the Ridgeland Police Department and iTraffic Safety, LLC)

182.    Plaintiffs repeat and reallege paragraphs 18 – 181 as if fully restated herein.

183.    Defendants Town of Ridgeland, the Ridgeland Police Department and iTraffic Safety, LLC conspired and agreed to unlawfully arrest Plaintiffs and Class Members as outlined above with the purpose of causing special damage to Plaintiffs.

184.    Plaintiffs and Class members are entitled to judgment against Defendants Town of Ridgeland, the Ridgeland Police Department and iTraffic Safety, LLC for their actual damages and punitive damages for Defendants' civil conspiracy.

## FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment as to the Town of Ridgeland, the Ridgeland Police Department and iTraffic Safety, LLC)

185.    Plaintiffs repeat and reallege paragraphs 18 – 184 as if fully restated herein.

186.    Defendants' improper and unlawful traffic enforcement, as set forth above, unjustly benefits the Defendants.

187.    A party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

39

188.   As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of the Plaintiff, Class Members, and the general public.

189.   The conduct alleged herein constitutes an unlawful, or unfair business practices on behalf of the Defendants.

190.   As a result of the Defendants' wrongful conduct, they have unjustly enriched themselves providing Defendants with sweltering financial profits to the detriment of Plaintiffs and the Class.

191.   Defendants' collection and retention of Plaintiffs' funds violates the fundamental principles of justice, equity, and good conscious. Defendants, under equitable principles, ought to return those funds to the Plaintiffs and Class Members.

192.   Defendants, the benefited party, equitably ought to compensate Plaintiffs and those similarly situated for all collection of funds through fines and bond forfeitures.

193.   Defendants have received and are holding monetary funds that belong to the Plaintiffs and those similarly situated.

194.   Equity and good conscious demand that the Defendants return these funds to Plaintiffs and Class Members.

195.   Defendants' unjust enrichment continues to accumulate as Defendants engage in the unfair and unlawful business practices complained of herein.

196.   Defendants' continued retention of the money gained through its deceptive and unlawful practices would be unjust considering the circumstances under

which the funds were obtained.

197.    The exact amount of the Defendants' unjust enrichment is not currently known to Plaintiff and the Class, but will be readily proven after discovery and at trial.

198.    Upon information and belief, Plaintiff and the Class are entitled to judgment against the Defendants for actual damages for unjust enrichment.

### FOR A SIXTH CAUSE OF ACTION
### (Violation of 18 U.S.C. § 1962(c)—
### RICO Against Defendants (in their individual capacities) Hodges, Woods, and iTraffic)

199.    Plaintiffs repeat and reallege paragraphs 18 – 198 as if fully restated herein.

200.    As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the I-95 Speed Trap Enterprise through a pattern of racketeering, including acts indictable under 18 U.S.C. §§ 1341 and 1343.

201.    As a direct and proximate result, Plaintiffs and members of the Class have been injured in their business or property by the predicate acts that make up Defendants' pattern of racketeering activity through the I-95 Speed Trap Enterprise.

### FOR A SEVENTH CAUSE OF ACTION
### (Violation of 18 U.S.C. § 1962(d)—
### RICO Against Against Defendants (in their individual capacities) Hodges, Woods, and iTraffic)

202.    Plaintiffs repeat and reallege paragraphs 18 – 201 as if fully restated herein.

203.    In violation of 18 U.S.C. § 1962(d), Defendants, as set forth above, conspired to violate 18 U.S.C. § 1962(c). The conspiracy was commenced at least as

early as July, 2010 and continues. The object of the conspiracy is to issue unlawful traffic tickets and collect the proceeds of those tickets for Defendants' profits.

204. As set forth above, each of the Defendants knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the I-95 Speed Trap Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343 in violation of 18 U.S.C. § 1962(c).

205. Defendants committed numerous overt acts of racketeering activity or other wrongful activity in furtherance of such conspiracy.

206. The purpose of the acts that caused injury to Plaintiffs and Class Members was to advance the overall objective of the conspiracy and the harm to the Plaintiffs and Class Members was a reasonably foreseeable consequence of Defendants' scheme.

207. As a direct and proximate result, Plaintiffs and Class Members have been injured in their business or property by the Defendants' conspiracy and by the predicate acts which make up the Defendants' pattern of racketeering activity through the I-95 Speed Trap Enterprise.

## JURY DEMAND

208. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray that this Honorable Court enter judgment against Defendant as follows:

42

1.     For an Order declaring that the action be maintained as a class action under the appropriate provisions of Rule 23(b)(2) and Rule 23(b)(3) of the Federal Carolina Rules of Civil Procedure, and appointing Plaintiffs and their counsel to represent the Class;

2.     For actual, compensatory, and punitive damages against Defendants in favor of Plaintiffs and the Class;

3.     For a permanent injunction prohibiting Defendants from operating the I-95 Public Safety Program, otherwise defined as the I-95 Speed Trap Enterprise;

4.     For attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c); and

5.     For any such relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this __21__ day of ___March, 2011.

STROM LAW FIRM, LLC


By:___s/J.P. Strom, Jr._____
J. Preston Strom, Jr. (Fed. I.D. No. 4354)
Mario A. Pacella (Fed. I.D. No. 7538)
2110 N. Beltline Blvd, Suite A
Columbia, South Carolina 29204
Telephone: (803) 252-4800
Facsimile: (803) 252-4801

The Rutherford Law Firm, LLC
J. Todd Rutherford (Fed. I.D. No. 7126)
P.O. Box 1452
Columbia, South Carolina 29202-1452
Telephone: (803) 256-3003
Facsimile: (803) 256-9698

Lord Law Firm, LLC
Ray A. Lord (Fed. I.D. No. 7631)
7436 Broad River Road
Suite 110
P.O Box 2735
Irmo, South Carolina 29063
Telephone: (803) 407-4140
Facsimile: (803) 407-4710