IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Jeremy Glenn Ahlum, | ] | |
| Mark William Emery, | ] | |
| and James Gary Gain, | ] | |
| on behalf of themselves and all | ] | |
| others similarly situated, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | Civil Action No.: 9:10cv3227-SB |
| | ] | |
| Town of Ridgeland, | ] | |
| Ridgeland Police Department, | ] | |
| Gary Hodges, | ] | |
| Richard V. Woods, and | ] | |
| iTraffic Safety, LLC, | ] | |
| | ] | |
| Defendants. | ] | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR REVISED MOTION FOR LEAVE OF COURT TO AMEND THE COMPLAINT AND REPLY IN SUPPORT OF SAME**

Plaintiffs, by and through their undersigned counsel, hereby submit this memorandum in support of Plaintiffs' Revised Motion for Leave of Court to Amend the Complaint. Plaintiffs' proposed First Amended Complaint alleges additional facts obtained in response to a FOIA request which further substantiate their claims that the Defendants violated their due process rights and give rise to additional causes of action including a claim of conspiracy and racketeering violations and unjust enrichment. Plaintiffs' proposed First Amended Complaint alleges: Defendant Woods, Hodges and iTraffic Safety, LLC violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961c, 1962(d).; a claim of conspiracy against the Town of Ridgeland, the Ridgeland Police Department and iTraffic Safety, LLC; a claim of Unjust Enrichment as to all Defendants, and a violation of the Tort Claims Act against

1

Defendants Town of Ridgeland and the Ridgeland Police Department. Plaintiffs proposed First Amended Complaint adds Plaintiffs Marcos Bognar, Andrew Skorjanc, Paul C. Liebrecht, Carl F. Selander, and James Goodman as party Plaintiffs. The facts giving rise to the proposed party Plaintiffs' tickets, and the method and manner in which the tickets were generated and served mirror that of the existing Plaintiffs. Importantly, Defendants Town of Ridgeland, Town of Ridgeland Police Department, Gary Hodges and Richard V. Woods have not challenged the request to add the additional plaintiffs. For the reasons set forth herein, Plaintiffs' Motion for Leave of Court to Amend the Complaint and add additional party Plaintiffs and additional causes of action should be granted.

## BACKGROUND

Plaintiffs have filed an Amended Motion for Leave to File an Amended Complaint, and attached as Exhibit 1 to same proposed First Amended Complaint. Plaintiffs file the Amended Motion for two primary reasons. First, proposed Plaintiff Selander's criminal action was voluntarily dismissed because Officer D.R. Swinehamer stated on the record in Municipal Court that two tickets with the same violation number were issued. Officer Swinehamer made the motion after extensive argument by Mr. Selander's counsel who made a special appearance to challenge subject matter and territorial jurisdiction. Second, Plaintiffs received a number of documents from the Ridgeland defendants pursuant to a Freedom of Information Request. The documents, albeit incomplete, shed new light on Defendant's operation as a means to generate revenue, including Defendant iTraffic's heavy involvement in determining when and where to deploy officers solely on the basis of revenue that will be generated. The documents received also call into question the validity of Defendant Hodges' testimony before a South Carolina Legislative Subcommittee. These additional facts, as set forth in the proposed Amended

2

Complaint, including the exhibits attached, demonstrate a true dispute ripe for this Court's adjudication as to all Plaintiffs.

## STATEMENT OF THE FACTS

Plaintiffs' factual statement set forth in their Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss is hereby incorporated by reference. Plaintiffs take this opportunity to highlight the additional facts as set forth in the proposed Amended Complaint filed contemporaneously herewith. Defendants attempt to argue that the purpose of the photographic enforcement of its local ordinance is for public safety. Documents received through a Freedom of Information Act request show that Defendants Hodges and Woods have delegated the police enforcement to iTraffic, who makes decisions solely on the basis of financial reasons.

In July, 2010, the Town of Ridgeland (hereinafter "Town") together with Defendant iTraffic Safety, LLC began enforcing a municipal ordinance for careless operation of a motor vehicle. In order to institute the program, Defendant iTraffic invested a substantial amount of money, providing the upfront costs to institute and run the program, including hiring two officers, back office administrative personnel, and providing the necessary equipment. In return for its investment, Defendant iTraffic receives 66% of the fees generated from each ticket. According to iTraffic's Collection Agency Agreement with the Town of Ridgeland, iTraffic further reserves the exclusive right to seek payment from alleged violators who fail to post a bond or appear in court. (Plaintiffs' Proposed First Amended Complaint ¶¶ 22, 58; Exhibit B.)

Defendant iTraffic exercises a heavy hand in the operation. iTraffic mandates the hours the officers are to be in the traffic unit, monitors the officers' time cards, and even makes decisions regarding when to deploy officers based solely upon financial considerations. (See

Plaintiffs' Proposed First Amended Complaint Exhibits C, D, E, F, G). Despite Mayor Hodges' representations early on that the Program was having an impact upon public safety given a reduction in the number of violations, internal discussions were brewing confirming disappointment in the number of tickets, and thereby corresponding revenue generated. By email dated October 18, 2010, directed to Jason Taylor, Town of Ridgeland Administrator, William Danzell of iTraffic advised, "Just a follow-up to our lunch on Friday. We should be consistently be (sic) delivering 120 to 130 tickets to Sandy on a daily basis. The potential is 200 but further improvements are required in the back office to achieve this number. We are working on this…but, we are not there yet. I'll keep you posted. (Plaintiffs' Proposed First Amended Complaint Exhibit D). By email dated December 1, 2010, William Danzell of iTraffic again contacted Town Administrator Jason Taylor and complained that the number of tickets generated for the month of November was insufficient. (Plaintiffs Proposed First Amended Complaint Exhibit H). iTraffic's directives and communication establish that the Defendants' motivation is to maximize profit in their police efforts.

When a person triggers the automated cameras for allegedly exceeding 80 miles per hour, that trigger sets forth a process where iTraffic will complete administrative paperwork and the Town of Ridgeland will mail the ticket, making the officer's only involvement is to be in the RV when the alleged violation occurs and to appear in court when the trial date occurs. There is even some question as to whether the officer writes the ticket or leaves the writing of the ticket and falsification thereof to iTraffic employees. What is known though is that the officer does not initiate a traffic stop and does not personally serve the driver within the officer's jurisdiction pursuant to S.C. Code Ann. § 5-7-110, State v. McAteer, 340 S .C. 644, 532 S.E.2d 865 (2000), and State v. Boswell, No. 26941, 2011 WL 873153 (S.C. March 14, 2011). Several days later,

the Ridgeland Police Department sends a letter under the signature of Richard Woods, to the driver along with a State of South Carolina Uniform Traffic Ticket.[1] Although the letter is signed by Richard Woods, the Chief of Police, the ticket has the electronic name of another officer printed on it. The letter informs the driver that he or she has violated a town ordinance regarding speeding and that he or she must pay a fine. The letter further states that because the driver has violated a town ordinance, the citation will not affect the driver's driving record. The letter does state, however, that if the driver fails to appear in court, the Town of Ridgeland may issue a bench warrant for the driver's arrest or take action to suspend the driver's license.[2] Interestingly, according to documents received in response to the FOIA request, the first draft of the letter was written by William Danzell of iTraffic.

According to the testimony of Defendant Hodges to a Senate Subcommittee, approximately 8,000 citations have been processed in the past five months. At fines ranging from $100-$300, this is an extremely profitable way for the Town to generate revenue, especially considering the fact that the majority of people stopped are traveling through South Carolina to an out of state destination and will likely pay the fine to avoid traffic court. iTraffic pays for the salary of the town's two traffic officers as well as the back office administrators who process the tickets and they supplied the equipment. In return, iTraffic receives 66% of the amount generated for each ticket.

---

[1] The letter has been revised several times during the class period. However, none of the revisions changed the method of arrest and service of the State of South Carolina Uniform Traffic Ticket.

[2] The letter and the ticket are not accurate and contain false statements. These false statements are solely designed to induce ticketed individuals to pay the ticket. According to Hodges' testimony before a South Carolina Senate Subcommittee, if an individual does not pay the bond or appear before the trial court, the Town of Ridgeland Police Department will re-send the ticket registered mail to the ticketed individual before resorting to taking action to suspend his/her license and seek a bench warrant.

While the letter sent under the signature of Richard Woods states that the Ticket, if fully paid, will not appear on a person's driving record, Woods letter threatens to initiate action to suspend the driver's license if the bond amount is not paid and the driver fails to attend Court on the date specified on the ticket.[3]  While Woods letter states that the violation will not appear on the person's driving record, the South Carolina Uniform Traffic Ticket informs the person that the failure to post bond or appear in court will result in notification to the person's home state Motor Vehicle Division for action to suspend the person's driver's license.  In response to a FOIA request, the Town of Ridgeland supplied what appears to be a purported second letter, which does not come from the Ridgeland Police Department.  Rather it comes from the municipal court under the signature of the Clerk of Court, Sandy Hall.  (Plaintiffs Proposed First Amended Complaint Exhibit J).  Shockingly, the Municipal Court sends the second notice and apparently does not notify the individual of a rescheduled trial and threatens criminal prosecution, even though the South Carolina Supreme Court has emphatically said that municipal judges and magistrate judges cannot prosecute offenses and cannot issue bench warrants of their own accord and must respond to appropriate prosecutions by law enforcement.[4] In The Matter Of Newberry County Magistrate Mark E. English, 367 S.C. 297, 625 S.E.2d 919 (2006).  Apparently, the Town of Ridgeland has also entered into a Collection Agency Agreement with iTraffic, whereby iTraffic is responsible to collect fines that have not been paid; The Town of Ridgeland has agreed to pay iTraffic 66% of the fines collected during this part of the program.  (Plaintiffs Proposed First Amended Complaint Exhibit B).

---

[3] As set forth above, Defendant Hodges' testified before a South Carolina Senate Subcommittee, that if an individual does not pay the bond or appear before the trial court, the Town of Ridgeland Police Department will re-send the ticket registered mail to the ticketed individual before resorting to taking action to suspend his/her license and seek a bench warrant.

[4] Plaintiffs do not allege that Municipal Judge Scoggins has any involvement in the issuance of this letter.

The processing of each ticket is riddled with numerous false statements made by Defendants Woods and the Town of Ridgeland Police Department. Each time an officer writes a ticket, the officer falsifies the ticket, noting that the date of arrest is the same as the date of the violation, notwithstanding that the officer knows that the ticket will neither be mailed nor received until well after the date of the offense.  The Ridgeland Police Department issues South Carolina Uniform Traffic Tickets via United States Mail knowing that such service is improper to effectuate an arrest. No where does Woods' letter or the alleged arresting officer state that the mailing of the letter is not proper service of a traffic ticket, that a Uniform Traffic Ticket cannot be used for a municipal ordinance violation, or that the officers are exceeding their territorial jurisdiction when attempting to serve the ticket on a driver outside of Jasper County. Additionally, it is clear that Defendants are not concerned with mailing tickets to individuals who were not driving.  As stated above, Defendant Hodges testified before a South Carolina Senate Subcommittee, that the officer does not match the Driver's license to the photograph. This investigative work has been delegated to iTraffic's employees.

The officers routinely allow tickets to be issued in their name without probable cause, as they are not the individuals matching photographs and driver information. The officers do not get affidavits from the iTraffic personnel or review photographs of Drivers' Licenses to match evidence collected from the highway. Defendants further recognize that the issuance of tickets is without probable cause.  According to the Town's website, even if the ticket is issued to a person who was not driving the vehicle at the time the iTraffic unit photographed the alleged speeding violation, the Town of Ridgeland insists that the individual must prove his or her innocence and also prove who was actually driving the vehicle.  Through the additional information Plaintiffs have obtained it is clear that the  Defendants conspired to make illegal and unlawful arrests for

7

violations of a municipal ordinance for speeding, whereby Defendants conspired to attempt to serve alleged violators of the municipal ordinance by direct mail and outside of their respective territorial jurisdiction.

With regard to the proposed party Plaintiffs, the underlying facts giving rise to proposed Plaintiffs Bognar's, Skorjanc's, and Liebrecht's claims mirror those of the existing Plaintiffs. Given that the Defendants have not yet filed a responsive pleading, the early stage of the litigation, the importance of judicial efficiency, and the absence of any prejudice to the Defendants, fundamental fairness and judicial economy require that this Court grant Plaintiffs' Motion for Leave to Amend the Complaint.

## **ARGUMENT**

Defendants Town of Ridgeland, Ridgeland Police Department, Gary Hodges and Richard Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2) (2008). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir.2010).

Defendants contend that the proposed Amended Complaint would be futile. In making their futility argument, Defendants contend that the current Plaintiffs lack standing because their convictions have become final under South Carolina law. Defendants further contend that the proposed Plaintiffs' claims are not yet ripe because their criminal cases have not yet been adjudicated. Finally, Defendants contend that Plaintiffs have not pled sufficient facts to establish a violation of RICO. As set forth below and in Plaintiffs' Consolidated Memorandum in

8

Opposition to Defendants' Motions to Dismiss, Plaintiffs have pled sufficient facts to set forth claims for which relief may be granted.

### THE ADDITIONAL CLAIMS ALLEGED BY THE PARTY PLAINTIFFS ARE NEITHER FUTILE NOR PRECLUDED BY LAW

As a preface to the argument, Defendants assert that the Plaintiffs claims are precluded by the failure to challenge their arrests in Municipal Court. Defendants also contend that the proposed Plaintiffs who have pending jury trial requests cannot challenge Defendants' conduct because their claims are not ripe because their criminal cases have not concluded. Defendants ignore that two of the proposed Plaintiffs have had their criminal cases dismissed by the Municipal Court, making their claims appropriate for this Court's adjudication, even under Defendants' arguments. Nonetheless, each of the Plaintiffs and proposed Plaintiffs have viable claims for adjudication.

I. **Plaintiffs Have Standing to Challenge Defendants Conduct and Their Claims Are Neither Barred Nor Precluded.**

As set forth in Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss, Plaintiffs' bond forfeitures were not for categorical traffic offenses. As a result, the bond forfeitures do not constitute convictions and cannot be used against them in a civil action.

II. **Plaintiffs Claims Are Ripe for Adjudication.**

Defendants claim that the civil claims of Plaintiffs with pending jury trial requests are not ripe for adjudication by this Court pursuant to the Younger abstention doctrine. As held by the Supreme Court in Younger v. Harris, a federal court should not equitably interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances. 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); see also Gilliam v. Foster, 75 F.3d 881, 903 (4th

Cir.1996). As such, a federal court may not award injunctive relief that would affect pending state criminal proceedings, absent extraordinary circumstances. The Fourth Circuit has, from <u>Younger</u> and its progeny, set forth the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in state proceedings." <u>Martin Marietta Corp. v. Maryland Comm'n on Human Relations</u>, 38 F.3d 1392, 1396 (4th Cir.1994).

Only putative Plaintiffs Bognar, Skorjanc, and Liebrecht claims for declaratory and injunctive relief and unjust enrichment are applicable under the <u>Younger</u> abstention doctrine, as those putative Plaintiffs who have pending criminal cases against them in municipal court. However, Plaintiffs claims of injunctive relief do not seek to interfere with the municipal court action. Rather, the claims for injunctive relief are to prohibit future issuance of tickets by mail outside the municipal officers territorial jurisdiction. Thus, putative Plaintiffs claims of injunctive relief, if awarded, will not affect or interfere with the state court proceedings. One federal court reaching this issue with respect to red-light cameras held that plaintiffs with proceedings pending in municipal court may sue because the "Plaintiffs are still subject to the provisions of the Red Light Camera Ordinance and may soon be subject to a fine or other sanction for their alleged violation of that Ordinance." <u>Kilper v. City of Arnold, Missouri</u>, No.: 4:08cv0267, 2009 WL 2208404 (E.D. Mo. July 23, 2009). Likewise, Plaintiffs claims for injunctive relief here seek to end Defendants' unconstitutional and illegal conduct so that they will not be subject to the same harm in the future. The state proceedings are inadequate here because the municipal judge cannot, through individual criminal trials, enjoin Defendants from

such conduct.  The municipal judge only has jurisdiction over individual criminal matters and does not have jurisdiction over the Defendants.

### III.     **Plaintiffs Have Stated Claims for Violations of RICO.**

To establish liability for violations of civil RICO, a plaintiff must demonstrate that Defendants established an enterprise, that the Defendants engaged in a pattern of racketeering activity, and that defendants caused Plaintiffs injury to their business or property.  18 U.S.C. § 1962.  A pattern of racketeering activity requires Plaintiffs to allege two or more predicate acts as set forth sections 18 U.S.C. § 1962(c).  When mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b). See Scott v. WFS Fin., Inc., Civil Action No. 2:06cv349, 2007 WL 190237, at *5 (E.D.Va. Jan. 18, 2007) (citing Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989)).  "Rule 9(b) requires pleading the time, place, and content of the false representations, the person making them, and what that person gained from them."  Id. (citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999)).  "However, '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which he will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'"  Id.

Here, the amended pleadings could not be more specific and reflect upon substantial prediscovery documents and testimony.  Defendants Gary Hodges, Richard V. Woods and iTraffic Safety, LLC are persons within the meaning of 18 U.S.C. § 1961(3) who associated with one another, operating as the I-95 Speed Trap Enterprise, affecting interstate commerce.  Although these Defendants participated in the enterprise, they have an existence separate and apart from the enterprise.  The members of the I-95 Speed Trap Enterprise act with a common

11

purpose of increasing revenue through improper and unconstitutional enforcement of a municipal violation to increase the profits received by Defendants. The I-95 Speed Trap Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which these Defendants engaged. The primary decision-maker within the enterprise is Gary Hodges who directs the activities of the enterprise. These Defendants control and operate the I-95 Speed Trap Enterprise through a variety of means, including, but not limited to investing funds to develop and implement the technology for the illegal speed traffic enforcement; by providing dedicated officers and equipment to staff the mobile traffic unit; by providing private staff to complete administrative work on tickets so the officers do not have to investigate their own tickets; by splitting the profits received from the tickets; by making false statements in the issuance of tickets; by issuing tickets without probable cause, and by issuing tickets outside of their territorial jurisdiction.

Defendants Hodges, Woods and iTraffic Safety engaged in both mail fraud and wire fraud in an attempt to collect an unlawful debt. Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, Defendants have engaged, and continue to engage, in violating each of these laws to effectuate their scheme.

For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants Hodges, Woods, and iTraffic, in violation of 18 U.S.C. § 1341, caused matter and things to be delivered by the Postal Service. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of the mails would follow in the ordinary course of business, or that such use could have been foreseen,

even if not actually intended. Defendants carried out their scheme in different states and could not have done so unless they used the Postal Service or private or commercial interstate carriers.

For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations, or promises, Defendants Hodges, Woods, and iTraffic, in violation of 18 U.S.C. § 1343, transmitted, caused to be transmitted and/or received by means of wire communication in interstate commerce, various writings, signs, and signals. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

The matter and things sent by the Defendants via the Postal Service or private commercial carrier or other interstate media include, inter alia: website materials that intentionally misled Plaintiffs and Class Members regarding the legality of the tickets and the consequences of failing to pay the tickets; correspondence that intentionally misled Plaintiffs and Class Members regarding the consequences of paying the fine for the ticket or failing to pay the fine for the ticket; correspondence that intentionally provided different statements regarding the collateral consequences of the ticket; the ticket that made materially false representations regarding the date of the arrest; and correspondence that failed to disclose Defendants' illegal scheme and intent to generate profits through unconstitutional arrests. Other matters and things sent through or received from the Postal Service, private or commercial carrier or interstate wire transmission by Defendants included information or communications in furtherance of, or necessary to effectuate the scheme, including fines paid by wire transfer, mail, or common carrier. These

payments were the result of these Defendants' attempt to collect unlawful debts, which also constitute predicate acts under RICO.

Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the Class and obtaining their property for Defendants' gain.  Defendants either knew or recklessly disregard the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the Class relied on the misrepresentations and omissions set forth above.  As a result of Defendants' fraudulent scheme, Defendants have obtained money and property belonging to Plaintiffs and Class Members, and Plaintiffs and the Class have been injured in their business or property by the Defendants' overt acts of mail fraud, wire fraud, and collection of unlawful debts.

Defendants Woods, Hodges, and iTraffic engaged in a pattern of racketeering activity.  Defendants did knowingly, willfully, and unlawfully conduct or participate in the affairs of the I-95 Speed Trap Enterprise through a "pattern of racketeering activity," within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).  The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of Defendant iTraffic Safety, LLC.  Defendants committed or aided and abetted in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§ 1341, 1343, 1956 and 1957 and collection of unlawful debt as described above, within the past ten years.  In fact, Defendants have committed several thousand acts of racketeering activity.  The acts of racketeering were not isolated, but rather had the same or similar purposes, participants, method of commission, and victims, including Plaintiffs and Class Members.

The multiple acts of racketeering activity which Defendants committed and/or conspired to aid and abet or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5). In furtherance of this conspiracy, Defendants committed numerous predicate acts, including but not limited to mail fraud and wire fraud. As such, Defendants have violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.

## CONCLUSION

For the reasons set forth herein, this Court should grant the Plaintiffs' Motion for Leave of Court to Amend the Complaint and add additional Plaintiffs and additional causes of action.

Respectfully submitted,

STROM LAW FIRM, LLC

By:  s/Mario A. Pacella.
J. Preston Strom, Jr. (Fed. I.D. No. 4354)
Mario A. Pacella (Fed. I.D. No. 7538)
2110 N. Beltline Blvd, Suite A
Columbia, South Carolina 29204
Telephone: (803) 252-4800
Facsimile: (803) 252-4801

The Rutherford Law Firm, LLC
J. Todd Rutherford (Fed. I.D. No. 7126)
P.O. Box 1452
Columbia, South Carolina 29202-1452
Telephone: (803) 256-3003
Facsimile: (803) 256-9698

Lord Law Firm, LLC
Ray A. Lord (Fed. I.D. No. 7631)
7436 Broad River Road, Suite 110
P.O Box 2735
Irmo, South Carolina 29063
Telephone: (803) 407-4140
Facsimile: (803) 407-4710