1          IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF SOUTH CAROLINA
2                  CHARLESTON DIVISION

3
JEREMY GLENN AHLUM, ET AL.     :
4                               :
         vs.                    :
5                               :
TOWN OF RIDGELAND, ET AL.      :    9:10 CV 3227 SB
6

7

8        Motion hearing in the above matter held Thursday,

9   April 28, 2011, commencing at 10:49 a.m., before the

10  Hon. Sol Blatt, Jr., in the United States Courthouse,

11  Courtroom III, 81 Meeting Street, Charleston,

12  South Carolina, 29401.

13

14

15  APPEARANCES:

16            MARIO A. PACELLA, ESQUIRE and JOSEPH P. STROM,
             JR., ESQUIRE, 2110 Beltline Blvd., Columbia,
17            SC, appeared for plaintiffs.

18            TIMOTHY A. DOMIN, ESQUIRE, 126 Seven Farms Dr.,
             Charleston, SC, appeared for defendants.
19
             MORGAN S. TEMPLETON, ESQUIRE, 145 King Street,
20            Charleston, SC, appeared for defendants.

21

22
                 RECORDED BY ANNA LANAHAN, ESR
23          TRANSCRIBED BY DEBRA L. POTOCKI, RMR, RDR, CRR
          Official Court Reporter for the U.S. District Court
24                      P.O. Box 835
                   Charleston, SC  29402
25                    843/723-2208

1          THE COURT:  Gentlemen, I've been over your briefs,

2    and I want to talk about standing, to start with; I think

3    that's the best thing to do.  And I'd like to ask the

4    plaintiff, whoever is going to speak for the plaintiff, a

5    question.  So who is going to handle the argument for the

6    plaintiff?

7          MR. PACELLA:  Your Honor, I will.

8          THE COURT:  All right.  You've got three plaintiffs

9    who sent their money in, the bond money in, and didn't show

10   up, and, of course, the money was forfeited.  And you've got

11   two who went down or had a lawyer go down, and their cases

12   were dismissed.  And you've got three who asked for a jury

13   trial and proceeding through the state system.

14         MR. PACELLA:  Yes, sir.

15         THE COURT:  Now, if I were to determine -- I haven't

16   concluded this -- but if I were to determine that the three

17   who forfeited the bond had, in effect, pled guilty to a

18   violation of a traffic law, and that the two who the case were

19   dismissed don't have any constitutional claim, and that the

20   three who are proceeding in the state system, that I shouldn't

21   interfere with the state, and I should let them go up through

22   state system to the Supreme Court or wherever they wanted to

23   go, and then come into this court; if I held that, you

24   wouldn't have any plaintiffs.

25      Do you agree with that?

1    MR. PACELLA:  I agree, Your Honor, if those were your

2    conclusions.  I will dispute whether those conclusions are

3    appropriate, but that is correct.  That would be a correct --

4    Correct, Your Honor.

5    THE COURT:  So that's why I think that we need to get

6    the standing before we go into whether or not these different

7    causes of action have any merit or don't have any merit.

8    MR. PACELLA:  Yes, sir.

9    THE COURT:  So that's what I want to know.

10   Now, since the plaintiffs -- I mean the defendants have --

11   we're here on their motion -- Well, we're here on your motion

12   to amend your amended complaint, and we're here on the

13   defendants' motion to dismiss your complaint.  I guess we

14   better get a complaint before any motion to dismiss can be

15   heard, because you've got to decide what the complaint is.

16   As I recall, you filed a complaint, then you filed -- they

17   moved to dismiss, and then you moved to amend your complaint.

18   And I think I'm right; before they moved to -- which they

19   moved to dismiss, but before they could move to dismiss, you

20   filed a motion to amend your amended complaint.

21   MR. PACELLA:  Yes, sir.  And the reason for that is

22   we received documents --

23   THE COURT:  I mean, you didn't add any parties to --

24   the motion to amend your amended complaint only adds facts, as

25   I understand.

1      MR. PACELLA:  That's correct.

2      THE COURT:  Doesn't add any parties.

3    Well, normally, unless the amendment is futile -- I mean

4    at this stage of the proceedings I always -- normally I would

5    allow an amended complaint, because it's only a few months

6    old.  However, if the amendments that you propose are futile,

7    then it wouldn't be any use to allow the amendments.  And your

8    big amendment, as I read it, is your first amended complaint

9    where you add these parties.  You only had three to start

10   with, didn't you?

11     MR. PACELLA:  Yes, sir, then we added five additional

12   parties.

13     THE COURT:  That was in your first amended complaint.

14     MR. PACELLA:  Yes, sir.

15     THE COURT:  You didn't add any parties in your motion

16   to amend your amended complaint.

17     MR. PACELLA:  That is correct.  At that point we were

18   moving to add additional facts that we discovered through a

19   Freedom of Information Act request.

20     THE COURT:  Well, let's discuss these issues, since

21   you're moving to amend to make them parties.  Let's discuss

22   these eight people in separate -- the three who forfeited

23   their bond, and the two who were dismissed and the three who

24   have asked for a jury trial and are waiting for the trial.

25     MR. PACELLA:  Yes, sir.

1         THE COURT:  Now, you tell me why your first three

2    don't fall into those who violated the traffic laws, and,

3    therefore, under the law, a forfeiture is the equivalent of a

4    guilty plea.  And, of course, a guilty plea, you waive all

5    your rights.  If they fall into that category, then they're

6    not proper parties.  And you explain to me why they didn't

7    violate the traffic laws of South Carolina.

8         MR. PACELLA:  Thank you, Your Honor.  I think there

9    are basically two main arguments, two main reasons why these

10   aren't actually bond forfeitures within the context of South

11   Carolina law that would amount to a guilty conviction, or a

12   conviction that has guilt attached to it for a subsequent

13   civil proceeding.

14       The first reason is that we've alleged that they actually

15   haven't had a bond forfeiture proceeding in the Town of

16   Ridgeland.  There was actually no proceeding, this is just

17   merely an entry in the court's docket system, and that the

18   case wasn't called on the record to determine if anyone

19   appeared to challenge that bond.  So that's the first and main

20   point that we want to make is that there wasn't a bond

21   forfeiture proceeding.  At least that's what we've alleged.

22   And the response filed by iTraffic in their motion to dismiss,

23   their documents that they filed were not transcripts of the

24   court proceedings, rather, docket entries that were made in

25   the computer system 7:00 o'clock at night, when the alleged

1   conclude from the record that they have, that this is

2   categorically a traffic offense.

3       So the two points --

4           THE COURT:  Are you arguing that going anywhere from

5   11 to 15 miles over the speed limit on a public highway or

6   interstate is not a traffic offense?

7           MR. PACELLA:  They were charged with careless

8   operation of a motor vehicle.  Your Honor, if our clients were

9   charged with speeding under the South Carolina Code, the

10  analysis would be exactly what you just said, Your Honor.  But

11  they didn't choose to charge them with the speeding violation

12  that is in the Traffic Code of South Carolina, of the South

13  Carolina Code; they chose this municipal ordinance, which is

14  more inclusive than just on the roadway.

15      And so from a pure factual matter, Your Honor, that may be

16  correct, but from a legal standpoint, this statute is -- this

17  ordinance is more inclusive than just the roadway.  So our

18  point is the reason why each of these three individuals have

19  standing to bring an action at this time is because there was

20  no -- the Court did not have a bond forfeiture proceeding.

21  We've alleged that.  And there's no evidence of an

22  on-the-record proceeding in court to determine guilt.  Or to

23  determine that the bond was actually forfeited, that anyone

24  appeared, or anything that would constitute a prosecution in

25  the court.

1    And then the second argu --

2    THE COURT:  Would they have to prosecute them if they

3    didn't show?  I mean, what kind of prosecution would you have?

4    MR. PACELLA:  Well, the prosecutor -- there has to be

5    an arm of the state to prosecute the action.  The Municipal

6    Court itself cannot do the prosecution of the case.  Because

7    there is a case, we actually have it cited in our briefing,

8    regarding a Newberry magistrate judge who was actually

9    prosecuting individuals.  And the Court said you can't do

10   that.  So there has to be a person for the state, in this case

11   an officer from the Town of Ridgeland, to be in the courtroom

12   when these bond forfeiture proceedings take place.  And

13   there's no evidence that that actually took place.

14   THE COURT:  All right, sir, go ahead.

15   MR. PACELLA:  And we were talking about these three

16   plaintiffs.  Plaintiff Emery, according to the documents that

17   iTraffic submitted in response -- or in their motion to

18   dismiss, is that his bond was paid a day after court.  So he

19   would have had to have been tried in his absence, for that to

20   be a valid bond forfeiture proceeding.  For his bond to be

21   forfeited, he would have had to have been tried in his

22   absence, and there's no record that plaintiff Emery was tried

23   in his absence.

24   THE COURT:  Is there any record that any of the three

25   were tried in their absence?

1        MR. PACELLA:  There is no record that there was a

2   trial in the absence for any of the parties.

3        THE COURT:  Well, just those three.

4        MR. PACELLA:  Right, right, that's right, for those

5   three.  There's no -- any of those three parties.  We haven't

6   moved on to any of the other parties, so that's what I'm

7   focusing on at this point.

8        THE COURT:  And that's your position about why they

9   didn't violate -- why they don't come under the forfeiture

10  amounting to --

11       MR. PACELLA:  Your Honor, the main argument is that

12  there was no forfeiture proceeding in court.  That's the main

13  argument.  Now, it may be simple as the traffic officer

14  reading the names of the tickets and verifying that no one has

15  appeared, and then for the judge to find bond forfeiture, have

16  a finding of a bond forfeiture, that may be as simple as the

17  proceeding needs to be.  But it has to be some proceeding, not

18  just a clerk in the office making an entry in the computer

19  system.

20       THE COURT:  Well, I mean, you admitted in the

21  complaint that a bond was posted.

22       MR. PACELLA:  Yes, sir.  Bond was posted, absolutely

23  correct.

24       THE COURT:  All right, sir, let me hear from the

25  defendants about that.  We'll just take them one at a time.

1    MR. PACELLA:  Okay, thank you, sir.

2    MR. DOMIN:  Your Honor, Tim Domin, I'm here on behalf

3  of the Town of Ridgeland, its police chief, Chief Woods,

4  and --

5    THE COURT:  You represent everybody but the i

6  whatever it is?

7    MR. DOMIN:  ITraffic, that's right.  That's right.

8    Your Honor, under South Carolina law, if bond is put up,

9  there's no requirement to conduct a trial in absentia or

10  hearing in absentia.  And that is South Carolina Code Section

11  56-5-2660.  And what they want to seize on is that applies if

12  it's any traffic violation or traffic law of this state, or

13  political subdivision thereof, which is why they want to get

14  into the strained argument that somehow speeding on I-95 is

15  not a traffic violation.  Clearly, that is a traffic

16  violation.

17    And I want to make certain that the Court understands how

18  strained this argument is.  Of course, in one instance,

19  driving on I-95 clearly is operating on the roadways of this

20  state.  There is no question about it.  They want to suggest

21  that the Town of Ridgeland's ordinance is broader, because it

22  states that it is illegal to drive in a careless manner on the

23  public ways of the state.

24    Now, I'm not aware of any situation where Ridgeland's

25  applying that to railroad tracks, is applying that to driving

on bike paths or anything of the sort.  That applies to

careless operation on the roadways.

Now, I will say to you, if somebody is drunk driving on

our sidewalks, I hope that that is also a violation of the

traffic laws of the state.  I mean, I don't think that there's

any place for that.

And state law, state law talks about defining public ways.

That's where they get their definition from, is from the Motor

Vehicle Code, which says public ways include things like the

sidewalks and appurtenances thereof.  And again, that makes a

lot of sense.  Because we don't want people driving drunk on

the sidewalks.  You don't want people committing traffic

offenses using their vehicle on the appurtenances to the

roadway.  But to somehow turn this whole thing on its head and

suggest that those are not -- that the careless operation by

driving 81 miles an hour on I-95, that that's not a traffic

offense, turns the definition of traffic offense on its head.

And I just don't think that any reasonable interpretation can

support the view that careless operation of a motor vehicle is

not a traffic offense.

And, you know, all the municipalities here in South

Carolina have enacted these careless operation laws, because

it allows them to charge a fine, but the motorist doesn't have

points assessed against their driver's license.  So by and

large, people who got charged with speeding are the ones who

1    would want to come in and ask for a careless operation.  So

2    all the towns around here, all the towns in the state for the

3    most part have these careless operation of a motor vehicle

4    ordinances.

5        There is no question, and they're not raising the question

6    that we have the authority to enact that law.  We have the

7    authority to enact that law.  And the only question is, is

8    that a traffic offense; and clearly it is.

9            THE COURT:  Well, they also raise the question that

10    there was no forfeiture proceeding.  What's your position

11    about that?

12            MR. DOMIN:  If you read South Carolina Code

13    56-5-2660, if a bond is put up, you're not required to try

14    them in absentia, you're not required to have further

15    proceedings.  And under the Truesdale case, it's equivalent to

16    a guilty plea.

17        So it is true that certain proceedings would apply to

18    General Sessions offenses, certain bond forfeiture proceedings

19    and/or trials in absentia, that by state law do not apply to

20    traffic offenses.  The only question is whether this is a

21    traffic offense.  And with due respect, speeding on I-95 is a

22    traffic offense.

23            THE COURT:  All right, sir.  Have you got anything

24    else you want to --

25            MR. PACELLA:  Well, Your Honor, I certainly think

1    it's valuable to realize that there are multiple doctrines

2    which prohibit these folks from relitigating their cases.

3    Res judicata, Heck versus Humphrey, as well as the

4    Rooker-Feldman Doctrine.  All of those have been briefed.

5         And I think that Your Honor is keying in on the correct

6    issue.  Because these folks who have pled guilty, their case

7    is over.  And that is what they've done, they've pled guilty.

8    By putting a bond up, by South Carolina State law, they have

9    pled guilty.  And if you plead guilty, you can't then come in

10   with a civil action and attack that guilty plea.

11            THE COURT:  Well, how long did they have -- when did

12   the forfeiture change into a guilty plea?

13            MR. DOMIN:  Well, under 56-5-2660, it says that the

14   Town is not allowed to set the ticket date any sooner than ten

15   days.  Somebody is allowed to appear and voluntarily enter an

16   appearance and say I wish to waive that ten-day requirement.

17   But what the statute does say, if they've paid up their money

18   and so long as more than ten days have passed, that is a

19   forfeiture and a guilty plea for which the Town does not have

20   to conduct a trial.  And it only applies to traffic offenses,

21   but it certainly applies to these offenses.

22        So to answer your question, I think it is on the time when

23   they put up the money and ten days has passed, that's when it

24   becomes a guilty plea.

25            THE COURT:  All right, sir.

1          MR. TEMPLETON:  Morning, Judge Blatt, Morgan

2     Templeton on behalf of iTraffic.  I'll be very brief.

3          THE COURT:  Take as long as you want.

4          MR. TEMPLETON:  That's all right, Judge, I know we

5     have other issues to deal with, and I'll be very succinct.  I

6     want to incorporate by reference Mr. Domin's arguments that he

7     has presented already to the Court, because they're equally

8     applicable to iTraffic.

9          The one other point that I would like to highlight for the

10    Court is that the one circuit-level court that has had an

11    opportunity to review this constitutional standing issue which

12    the Court is focusing on, is the Fifth Circuit.  And we've

13    cited the two Bell decisions that really -- and they're in the

14    context of a photo traffic enforcement context.  Those

15    decisions come down squarely on the side that folks that have

16    pled guilty or had their day in court with respect to their

17    traffic violation, the game is up.  They have no

18    constitutional standing because there's been no injury.

19         The Tenth Circuit, in a different factual context, has

20    language in it that talks about activities that make criminal

21    activity more difficult, don't qualify as an injury-in-fact

22    for Article III standing purposes.  And that's exactly what we

23    have here, Judge.  These folks presumably violated the law,

24    they posted a bond, and under South Carolina state law, the

25    Truesdale case that Mr. Domin cited, that is tantamount to a

1  guilty plea.  And so for the three folks that have posted

2  their bond, they had their opportunity to contest, chose not

3  to, and with due respect to those men, their day is up and

4  they need to live by the decision that they made, and can't

5  come to this Court to try to undo that which they voluntarily

6  chose to do.  For the additional reasons that Mr. Domin cited,

7  the Heck versus Humphrey argument, under the -- and there's a

8  couple of cases cited in our brief in the RICO context, that

9  you can't take under the premise of a civil lawsuit, and

10  present facts that would necessarily impugn the validity of a

11  criminal conviction.  You can't go through the back door, if

12  you can't walk through the front door.  And that's what these

13  three are trying to do.

14          THE COURT:  All right, sir.

15          MR. TEMPLETON:  Thank you, Your Honor.

16          THE COURT:  I'll be glad to hear from the plaintiff

17  or anything in reply.

18          MR. PACELLA:  Your Honor, the traffic ticket which

19  is -- it's the second page of Exhibit A to each of our

20  versions of the complaint, each of the iterations of the

21  complaint actually tells a different --

22          THE COURT:  Wait a minute now, let me get it.

23          MR. PACELLA:  Yes, sir.

24      (Brief interruption in proceedings.)

25          THE COURT:  All right, sir, I've got it now.

1          MR. PACELLA:  There's several paragraphs.  This is

2     actually very difficult to read in this document.  But the

3     second-to-last paragraph on the right-hand side, the right

4     column states, "However, if you are not required to appear in

5     the court on the assigned trial date and have previously

6     posted bond --"

7          THE COURT:  Wait a minute, let me see.

8          MR. PACELLA:  Yes, sir.

9          THE COURT:  Where are you reading from?

10         MR. PACELLA:  The right-hand column, Your Honor.

11         THE COURT:  Yes, sir.

12         MR. PACELLA:  The second-to-last paragraph, begins

13    with however.

14         THE COURT:  However.  I see that.

15         MR. PACELLA:  "-- if you are not required to appear

16    in court on the assigned trial date and have previously posted

17    bond and do not appear on the trial date, your bond may be

18    forfeited unless the judge has agreed to have your case heard

19    at --" I think that says another time.

20       So the ticket is actually saying there's going to be a

21    proceeding on that date even if you pay your bond.  That's

22    what the ticket says.

23         THE COURT:  Let's see again how -- Read that again

24    and tell me how you arrive at that conclusion.

25         MR. PACELLA:  Yes, Your Honor.  "However, if you are

1    not required to appear in court on the assigned trial date and

2    have previously posted bond and do not appear on the trial

3    date, your bond may be forfeited, unless the judge has agreed

4    to have your case heard at another time."

5              THE COURT:  Well, and as to these three people, did

6    the judge agree to hear it at another time?

7              MR. PACELLA:  That's not the point.  That's not the

8    operative language in this paragraph, Your Honor.  The

9    operative language is "and do not appear."  Well, there has to

10   be a proceeding to determine if someone appeared on the

11   designated trial date, according to the ticket.  And that's

12   our understanding of the South Carolina Code.

13             THE COURT:  Do you contend that you appeared?

14             MR. PACELLA:  Pardon?

15             THE COURT:  Do you contend that you appeared?

16             MR. PACELLA:  That our clients appeared?  Your Honor,

17   that's not what we're contending.  What we're contending is

18   there was no bond forfeiture proceeding; therefore, the bond

19   forfeiture doesn't constitute a guilty conviction which would

20   prevent them from litigating the matter here.  That's what

21   we're contending.

22             THE COURT:  They posted the bond and --

23             MR. PACELLA:  Yes, sir.

24             THE COURT:  -- this tells them that you may be

25   forfeited, the bond be forfeited unless the judge does

1    something, which wasn't done.  And the time expired under

2    South Carolina law, the ten days.

3              MR. PACELLA:  Or on the trial date.

4              THE COURT:  Sir?

5              MR. PACELLA:  It expires from the ten days or on the

6    trial date.

7              THE COURT:  Well, I mean, I don't know what the trial

8    date was, but -- I don't know how long it was.  But they

9    didn't do anything either within the ten days or within the

10   trial date.  They didn't take any action.  They posted their

11   bond, but they didn't do anything else.

12             MR. PACELLA:  Your Honor, it is our contention that

13   there was no proceeding in court to have a bond forfeiture, as

14   required by South Carolina law.

15             THE COURT:  Now, you're taking the position that

16   there's got to be a judge on the bench, and the police officer

17   or whoever is handling it for the Town has got to come in and

18   offer this ticket or whatever it is with the notice, and say

19   that this defendant has never appeared, and, therefore, we

20   move to have the bond forfeited?

21             MR. PACELLA:  Your Honor, actually I'm making it even

22   simpler than that, Your Honor.  I am arguing that they have to

23   have an officer in the courtroom, they have to read the roll

24   of the people who pay their bonds to ensure that no one is in

25   the courtroom.

1          THE COURT:  Where do you get that kind of law from?

2          MR. PACELLA:  Well, Your Honor, this is actually --

3   there is a court hearing that date.  There has to be a

4   hearing, according to the ticket.  And we have to -- where we

5   get that is this is a court of record and this is going to be

6   a determination of an adjudication of guilt.

7          THE COURT:  Don't they tell them, if you don't show

8   up, your bond's going to be forfeited?

9          MR. PACELLA:  That's right.  They actually say that

10  in the ticket.  They also say there's going to be a trial that

11  date.

12         THE COURT:  No, where did they say trial?

13         MR. PACELLA:  Well, if you don't appear on your

14  designated trial date.

15         THE COURT:  If you don't appear in court -- Where do

16  you read --

17         MR. PACELLA:  Same paragraph, Your Honor.

18         THE COURT:  Yes, sir.

19         MR. PACELLA:  "However, if you are not required to

20  appear in court on the assigned trial date and have previously

21  posted bond and do not appear on the trial date."  So there's

22  an opportunity, you could pay your bond and go to court and

23  have a trial.

24         THE COURT:  You can post your bond.  You don't pay

25  it.  It doesn't become paid unless you don't show up.

1          MR. PACELLA:  That's correct terminology, Your Honor,

2     you post your bond, you go to court, and when they call your

3     case, you stand up and say I want a trial.

4          THE COURT:  But if you don't do any of that.  If you

5     don't go down there, you take the position that they've got

6     to -- what you're taking the position is they've got to call

7     your case, so to speak.

8          MR. PACELLA:  Yes, sir.

9          THE COURT:  And see if you're in court.

10         MR. PACELLA:  Yes, sir.

11         THE COURT:  The State against So-and-so, Town against

12    So-and-so, and see if that person is in court.  If that person

13    isn't in court, they forfeit the bond; that's your position,

14    as I understand it.

15         MR. PACELLA:  Yes, sir.

16         THE COURT:  And if that person is in court and he

17    wants a trial, they give him a trial then.  If he wants a jury

18    trial, they wait till they have a jury trial.

19         MR. PACELLA:  Yes, sir.

20         THE COURT:  But you take the position that they've

21    got to call his case, so to speak.

22         MR. PACELLA:  Yes, sir.

23         THE COURT:  And he can't forfeit his bond -- well,

24    you take the position -- does that mean then that he's got to

25    go -- if he doesn't show up, and they call his case, then they

1    can forfeit, they can forfeit his bond.  But your position is

2    they've got to call his case.

3             MR. PACELLA:  Yes, that is the position, Your Honor.

4    They have to call the case, and there could be a bond -- and

5    then when the case is called, if the person did not appear,

6    then the bond forfeiture -- then there could be a bond

7    forfeiture under the statute that's been cited by the

8    defendants.

9             THE COURT:  And then you take the position that the

10   law requires, the notice requires that or the law requires

11   that, and that wasn't done.

12            MR. PACELLA:  Sure, I mean, there's --

13            THE COURT:  What happens then if the person just

14   doesn't do anything?

15            MR. PACELLA:  Well, Your Honor, that's -- the point

16   of it is, what we're challenging is whether -- what we're

17   arguing is that if they don't have that bond forfeiture

18   proceeding, as simple as I've described it in open court, then

19   this payment of the ticket, the posting of the bond and the

20   subsequent keeping of the money by the Town, does not result

21   in a guilty conviction which would -- and then, therefore --

22            THE COURT:  Which they waived all that.

23            MR. PACELLA:  -- would include a civil suit.  And

24   there's a case, Richland County --

25            THE COURT:  Would preclude any kind of suit.

1          MR. PACELLA:  That's correct.

2          THE COURT:  All right, sir, I think I understand your

3     position.  Let me hear what the defendants say about that

4     particular part of the argument.

5          MR. DOMIN:  Calling the case is not required.

6     There's no law that says you have to call the case.  Second,

7     none of these people allege that they showed up.  None of

8     these people alleged that they said I'm here and I want to

9     have my trial.

10       Third, at every Municipal Court in the state there's some

11    process of figuring out who's there and who's not there.  I

12    mean it may not be that they have to call every case, but

13    ultimately they determine who's there and who's not there.

14    These people not being there, paid their -- posted their bond,

15    and then ultimately forfeited the bond by virtue of them not

16    being there.  There's no factual dispute.  They were not

17    there.  They don't have an opportunity then to say -- and we

18    think this is very consistent with Section 56-5-2660.

19         THE COURT:  What does that section say?

20         MR. DOMIN:  Essentially says you're not required to

21    conduct a trial in the event somebody posts a bond.  If they

22    post bond --

23         THE COURT:  I got all these sections; I'm not sure

24    where they are.  Anyway, read me, what does this section

25    you're talking about say?

1      MR. DOMIN:  I did not bring the exact -- I did not

2   bring the entire section, Your Honor.  It refers to, Your

3   Honor, that the posting of a bond -- if it is a traffic case,

4   the posting of the bond does not then require there to be a

5   trial, in that you must provide at least the ten days, but

6   that after the ten days, that the bond may be forfeited.  And

7   so under those circumstances, all the Municipal Courts and the

8   Magistrate's Courts, they don't have to call each case and try

9   it in absentia.

10     And the idea that they need to call the case and say is

11  so-and-so here, is so-and-so here, is so-and-so here, there's

12  no law that says that.  There's no law that says they have to

13  go down the list of people who have forfeited bond, in order

14  to see that they're there.  I mean, they're trying to impose a

15  requirement that no South Carolina case and no South Carolina

16  statute has, and that no Municipal Courts are doing.

17     THE COURT:  Well, these people don't contend that

18  they ever went; these three people don't contend that they

19  ever showed up or anything.

20     MR. DOMIN:  Right.  If you look, what was their

21  intent, Judge?  Obviously they paid their money, and under

22  South Carolina law, posting bond and not showing up,

23  constitutes a guilty plea.  And to me, to suggest that they

24  can avoid that by saying that their name was not called out to

25  see if they were there, seems a bit counterintuitive, because

1    they're not claiming that they were there.

2         THE COURT:  Okay.  Thank you.  Do you have anything

3    else you want to add?

4         MR. PACELLA:  Not on that issue, Your Honor.

5         THE COURT:  Okay, you got anything else?

6         MR. TEMPLETON:  No, Your Honor, nothing further.

7         THE COURT:  Now let's get then to the two who had --

8    they didn't appear themselves, but they had lawyers who

9    appeared and the case was dismissed.  Now, what rights of

10   theirs have been violated?  What constitutional rights.

11        MR. PACELLA:  What constitutional rights have been

12   violated as to the specific individuals who --

13        THE COURT:  The two.

14        MR. PACELLA:  -- who have been dismissed, whose cases

15   were dismissed?

16        THE COURT:  They go to court, they sent a lawyer to

17   court, they don't go themselves, they sent a lawyer to court.

18   And when he goes there, I don't know what happened, but

19   anyway, the charges were dismissed.  I recall the patrolman

20   said there were two tickets or two individuals issued the same

21   ticket number or something like that; I've forgotten what it

22   was.

23        MR. PACELLA:  Yeah, after about ten minutes of

24   argument, yes, then the officer ended up --

25        THE COURT:  I don't know what happened on the other

1    one.

2          MR. PACELLA:  And the other one, Your Honor, was

3    dismissed because the -- just dismissed before court started.

4    By the officer.

5          THE COURT:  I see.  Now, what rights have they got

6    that have been violated?

7          MR. PACELLA:  Well, Your Honor, this is --

8    admittedly, this is not a custodial seizure, a Fourth

9    Amendment arrest, because there's no taking of my clients into

10   custody.  But they were arrested.  The ticket constitutes an

11   arrest.  There's a noncustodial arrest.  Which due process,

12   the Fourteenth Amendment due process of law does have --

13   provides some protections.

14      And the question is, does this conduct shock the

15   consciousness of the Court that would make that an

16   unconstitutional arrest that would give them rights under the

17   Fourteenth Amendment.

18         THE COURT:  Your position is that under the

19   Fourteenth Amendment it's got to -- and the Fourth -- it's got

20   shock the conscience of the Court, sending them a traffic

21   ticket?

22         MR. PACELLA:  Your Honor, actually I think it's a

23   little more involved than that.  And I think this goes really

24   to the heart of our case and goes to the heart of what we're

25   contesting.  These are municipal officers, Your Honor, they

1    have limited jurisdiction, limited territorial jurisdiction to

2    the municipality.  There is a South Carolina case that extends

3    that within three miles for hot pursue and for offenses

4    committed in their presence.  It does not give them

5    jurisdiction to make an arrest and effect an arrest out of

6    their jurisdiction.

7        We have a statute, South Carolina Code 5-7-110, which lays

8    out the jurisdiction.  There's some exceptions when there's a

9    contract with another jurisdiction, hot pursuit within

10   three miles, or in the investigation in another jurisdiction

11   with an agreement with law enforcement in that other

12   jurisdiction.

13       There are three cases.  State versus Morris, State versus

14   McAteer, and then a month ago, month and a half ago,

15   March 14th, 2011, State versus Boswell, that essentially just

16   says exactly that, you can't go outside of your jurisdiction

17   to make an arrest.  That's what they're doing.  And they're

18   doing it knowing that this statute was in place.  These cases

19   came out -- first one came out in '89, that's the Harris case;

20   McAteer came out in 2000.  Then they're continuing to do it

21   after State versus Boswell.  The officers are exceeding their

22   jurisdiction.  And that's not the only problem here, although

23   that is the heart of the problem, that the officers are going

24   beyond their jurisdiction.

25       We have alleged that the officer doesn't even write the

1　　ticket.  That's being taken -- that's being done by iTraffic,

2　　by the private company.  The officer doesn't make the

3　　determination of probable cause.  That determination is also

4　　made by iTraffic.  The officer doesn't serve the ticket --

5　　　　　　THE COURT:  You don't deny there was probable cause,

6　　because you don't admit they -- you don't contest that they

7　　were speeding.  I mean, I haven't seen any denial that the

8　　people weren't violating the law.  I mean, is there any of the

9　　plaintiffs come in and said -- I haven't seen any of them say

10　　I wasn't going 81, I wasn't going 85.

11　　　　　　MR. PACELLA:  Actually, Your Honor, that is in the

12　　pleadings, Mr. Leebrecht (phonetic) has alleged that it's not

13　　even him.  He's not the one of the two that you're focusing on

14　　at this point, but he's one of the ones that asked for a jury

15　　trial.  It's not even -- he's alleged it's not even him.

16　　　　　　THE COURT:  I know, we'll get to the jury trial

17　　people later.

18　　　　　　MR. PACELLA:  Right.

19　　　　　　THE COURT:  I'm talking about the ones that we're

20　　discussing, the two here, I hadn't seen that they denied they

21　　were violating the speed law.

22　　　　　　MR. PACELLA:  Your Honor, that's pretty interesting.

23　　It's really something that's kind of difficult to determine

24　　whether you were speeding at that time at that location.

25　　Because there -- you could have -- because of the way they do

1    this procedure where they're not stopping you, you don't

2    know -- if you had someone with you who could be your witness

3    that -- to say, look, I looked at the speedometer and we were

4    going 72 miles an hour or 71 miles per hour.  There's no way

5    for you to -- some GPS systems can capture your speed.  If

6    someone turns on some traffic lights, you could push a button

7    and capture your speed to have some evidence that you could

8    present to a jury.

9        So actually, Your Honor, the reason why this is so

10   offensive and so procedurally flawed, is that you are deprived

11   of your opportunity to even defend yourself.

12       So to say -- for our clients to --

13           THE COURT:  Wait a minute.  Wait a minute.  How does

14   it deprive you of an opportunity to defend yourself?

15           MR. PACELLA:  To gather the evidence that you would

16   have, if -- If you were stopped immediately for speeding by

17   the officer, you would be able to recognize who was around

18   you, maybe talk to the people in your car about that exact

19   moment versus another moment in time or another location.  You

20   would be able to use -- if you have a GPS system that allows

21   you to capture your speed, you'd be able to push a button and

22   it could capture your speed, you could bring that into court

23   as part of a trial.  There are a number of things that you

24   could do that you're deprived of in this method of traffic

25   enforcement.

1          But more than that, Judge, the officer doesn't write the

2     ticket.  That's being done by iTraffic, by the private

3     company.  The officer doesn't make the probable cause

4     determination, the officer doesn't even mail the ticket.  The

5     mayor testified before a Senate subcommittee that it's mailed

6     by the Town Hall.  So he's not even -- the officer's not even

7     trying to serve the ticket by mail.

8          The letter that they send in conjunction with the ticket

9     conflicts.  They say different things.  One says that won't go

10    on your traffic record, that's the letter; the other says it

11    will.  The letter says that, you know, a bench warrant may be

12    issued, they're threatening different kinds of prosecutions

13    that go along --

14              THE COURT:  They dismissed all of this.

15              MR. PACELLA:  But that doesn't change the fact that

16    there was an unconstitutional arrest at the time they received

17    the ticket.  It doesn't change the offensive conduct that took

18    place.  And it was dismissed, which essentially is a finding

19    of not guilty.

20         And they have constitutional rights, just like if -- if

21    there is an unconstitutional arrest and someone goes through

22    trial and wants to bring suit, they have that opportunity to

23    bring suit.

24         You know, in this process they also tell people that when

25    they send you a ticket, they have a web site that you can go

1    to, to actually pay your ticket and give you information.

2    That website says that if it's not you, you still have to pay

3    the fine, or you've got to come to court.

4        And we talked about not holding bond forfeitures in open

5    court.  There's actually another point that's not in our

6    pleadings, and I am going to recognize that it's not in our

7    pleadings, but I would like to tell the Court that.  We do not

8    believe that there's been any jury trials to date, even though

9    the program's been going on since July.  And I think that that

10   is sort of a telling situation, in addition to the two people

11   who were dismissed when we went and appeared in court for

12   them, trying to adjudicate their -- have their rights

13   adjudicated by the judge.

14       So to tell you why these two individuals whose tickets

15   were dismissed have rights, well, they have rights because

16   this is an unconstitutional arrest, not a Fourth Amendment

17   violation, so it's a higher standard that we have to show that

18   that arrest shocks the consciousness.  But these factors that

19   I point out, think -- even the officer going outside of his

20   jurisdiction alone should be enough to shock the conscience of

21   the Court, but when you combine all of those factors, that

22   becomes a Fourteenth Amendment violation, Your Honor.

23            THE COURT:  Okay.  Thank you.

24            MR. DOMIN:  There's no constitutional violation by

25   mailing a ticket.  Your Honor, first of all, the Fourth

1  Amendment protects against unreasonable searches and seizures.

2  This is clearly not a search.  They want to argue that it is a

3  noncustodial arrest.  Respectfully, under federal

4  jurisprudence, mailing a ticket to someone is not a seizure.

5  I mean, first of all, it defies the common sense notion of

6  what a seizure is.  We in no way stopped them or detained

7  them.  Under federal law, a seizure is determined to be a

8  situation where a reasonable person would believe they're not

9  free to leave.  These people leave; there's no -- there's

10 absolutely no reasonable person who would believe that they

11 are not free to leave, simply because a camera took a picture

12 of them.

13      So we don't think that this qualifies as a federal

14 constitutionally-protected Fourth Amendment seizure.  It just

15 does not rise to that level.  And, in fact, we have cited to

16 you case law that would indicate that providing a ticket to

17 somebody, even if you're going to detain them for some period

18 of time to give them a ticket, is not a seizure.  But clearly,

19 mailing a ticket to them would not constitute a Fourth

20 Amendment seizure.

21      Your Honor, they have cited to you three state law cases

22 that say that officers cannot arrest outside their

23 jurisdiction.  All of those are Common Pleas offenses --

24 General Sessions offenses, I should say -- for which the

25 person -- the officer actually was outside -- completely

1  outside the jurisdiction, and made an arrest that was, in some

2  situations, based upon conduct that occurred outside the

3  jurisdiction, but, in part, was triggered by conduct that

4  started in their jurisdiction.

5      In the most recent case, the sheriff found that somebody

6  was going into women's houses and stealing women's clothes,

7  and he tracked it back to another county, and a person had a

8  house in another county, and he saw this person pull up and

9  then start throwing women's clothes in the woods.  And he

10 effectuated an arrest, because he knew that this was the same

11 fellow who had been stealing clothes back in his county.

12 Again, he effectuated a custodial arrest.

13     In this situation there's no dispute that the offense is

14 committed within the officer's presence.  There is an officer

15 in the van when the photographs are being taken, who is able

16 to exercise his discretion and say, that vehicle was not

17 speeding.  Or, more likely, we didn't get a clear picture of

18 that vehicle; we can't tell if it's that truck or that car; so

19 we're able to throw that out.  The officer there in the van is

20 able to throw that out before it goes any further.

21     The offense itself is committed within the officer's

22 observation and within the Town of Ridgeland, which is within

23 his jurisdiction.  So these cases are not similar to those

24 General Sessions cases that the plaintiffs would cite to you.

25     Your Honor, the folks who receive these tickets are not

1    deprived of any -- any right -- any federally-protected right.

2        And I would submit hypothetically, some 15 states have got

3    these traffic camera type programs.  If there's some federal

4    constitutional reason why you're not able to mail tickets to

5    people, then they would be illegal in every single state.  It

6    wouldn't be any different in South Carolina versus someplace

7    else.

8        If --

9            THE COURT:  Just because there's no law and they

10   haven't raised it somewhere else, doesn't mean it can't be

11   raised.

12           MR. DOMIN:  Well, I agree with that, Your Honor.

13   But, in these other states the decisions uphold these traffic

14   cameras.  And the key -- really what the plaintiffs are

15   complaining about is that state procedural law has been

16   violated.  They are contending that state procedural law

17   requires a ticket to be hand served on somebody.  That's not a

18   federal requirement.  It's not -- there's nowhere in the

19   United States Constitution where it says that a ticket must be

20   handed to you in person as opposed to being mailed to you.

21       If they want to take that issue to State Court for some

22   kind of a state declaratory judgment, or for that matter, if

23   they want to have one of these tickets appealed up to the

24   South Carolina Supreme Court, they can get a decision of that

25   issue.  But it's not a federal constitutional issue.

1      And none of these folks have been deprived of any rights.

2   These folks specifically that we were talking about, the folks

3   who appeared and who their cases are dismissed, they received

4   due process, they got the opportunity to appear in court, and

5   the system worked.  The system worked because the tickets were

6   dismissed.  They could raise any issues they want.  And that

7   there were no fines assessed as a result of them, and there

8   were no collateral consequences as a result of these tickets.

9      So we don't think that we've taken away any rights of any

10   defendants, but surely not this category of defendants.

11   They're the ones who got their day in court, and ultimately

12   those tickets were dismissed.  Thank you.

13      MR. TEMPLETON:  Again, Judge, for the record, I adopt

14   by reference Mr. Domin's arguments completely, I think he

15   captured the essence of the argument.

16      Focusing back, the three points that I would want to leave

17   the Court for its consideration on these, with this class of

18   person, is, first and foremost, the standing issue.

19      The argument that has been made is that there's been a

20   constitutional challenge, in essence, a due process violation.

21   The due process had worked.  They had their day in court, they

22   appeared through counsel.  And right, wrong or indifferent,

23   the tickets were dismissed.  Thus, there's no damage.  That's

24   point two, there's no damage here.  Every day across America,

25   across this state people are accused of crimes, they have

1    trials, they have hearings, cases get thrown out all the time.

2    The system works.  And it worked in this instance.

3         With respect to the three state cases talking about the

4    custodial arrest, that's a huge point.  Those were custodial

5    arrests.  This is, at best, a noncustodial arrest.  So those

6    three cases have no application.

7         Which takes me to my third point.  There is no statute in

8    South Carolina that requires that the ticket be served

9    personally.  There is no statute that requires it be mailed by

10   certified mailed or some process server.  To the contrary,

11   Section 56-7-20 contemplates and uses the word given,

12   G-I-V-I-N-G.  Given.  E-N, not I-N-G.  Given to the offender

13   in the context of the uniform traffic ticket.  These tickets

14   were given.  They were given vis-a-vis the United States mail

15   service, but there's no language in that statute that requires

16   it be personally given at the time that the ticket is issued.

17        So with respect to the category of folks whose claims or

18   charges were dismissed, there is no constitutional injury

19   here, there's no violation of any constitutional or state

20   protected claim.

21        Thank you.

22            MR. STROM:  Your Honor, can I reply to that?

23            THE COURT:  Yes, sir.

24            MR. PACELLA:  Your Honor, we talked about shocking

25   the conscience of the Court.  I mean, let's think about what

1    we have here.  We had a camera system that originally was

2    working without the officers in there.  And then there was an

3    Attorney General's opinion that said the officer had to

4    participate, so officers start appearing.  This thing is fully

5    automated.  Somebody comes down the road, the radar apparently

6    goes off, a flash goes off, it takes a picture of the driver,

7    takes a picture of the back of the car so it can get the

8    license tag.  All this is computer generated.

9        What we've alleged in our complaint is the officer is

10   sitting there, and he's then watching, I guess.  That

11   information is then taken to what I refer to as the girls at

12   City Hall, who are paid for by the private company.  And those

13   women go on line to the various Highway Department websites

14   and pull up pictures of the person who owns the car, based on

15   the license tag.  And they look at that picture, and they look

16   at the picture of the person that was captured driving the

17   vehicle, and they make some determination as to whether or not

18   this is the right person.  I think.  We've alleged in our

19   complaint that the officer does not participate in that.  And

20   that's where probable cause lies.  You've got to determine

21   whether you are charging the right person.  And they have

22   delegated that to a staff person.  The officer may be in the

23   vehicle, in the van watching it come by and match up the car

24   and the speed and all of that, but he is not, as it is alleged

25   in our complaint, participating in confirming that that was

1    the person driving the car.  And then the girls or someone at

2    Town Hall mails these tickets.

3        So, you know, this is a criminal charge, and this is

4    service.  And in all the years I've been practicing law, there

5    are rules on how you serve process.  And I've never seen

6    process served by regular mail.  It's clearly -- and our

7    complaint alleges that these people, these officers and the

8    girls, I mean, so we've got this camera stop, we've got no

9    probable cause determination by a police officer, we've got it

10   mailed out of the jurisdiction.

11       Further shocking, as our complaint alleges, they get a

12   uniform traffic ticket, but they get a separate letter from

13   the police chief who says it -- the ticket says that a bench

14   warrant will be issued.  The letter says that if you pay your

15   bond -- and all these are exhibits in the complaint -- that

16   there won't be any points against you.  They're inconsistent.

17       And then you're given a court date.  And there's no

18   process at the court date.  There's no process.  There's no

19   determination, there's -- you know, I've been in hundreds of

20   magistrates courts in this state, everybody has a tape

21   recorder and this stuff is read on the record.  You've got a

22   city police department, when they forfeit bonds like this, the

23   clerk calls out the names, and the judge, one by one, checks

24   his list.  BF, makes a note on the record, BF, BF, BF, on the

25   docket, that bond forfeiture, bond forfeiture, bond

1  forfeiture.  No process here.

2      Then they allege that, well, you ought to just go to State

3  Court and deal with this.  Well, we had two clients who came

4  to us, not anything particular, we go down there and they

5  dismiss the cases.  And as Mr. Pacella has pointed out, I've

6  called some lawyers from that area -- and if you'll allow us

7  to amend the complaint, I was going to ask you to allow us to

8  add this language.  I'm told that there are thousands of jury

9  trial requests pending down there.  Thousands.  Mr. Lord,

10  sitting right here, my co-counsel, has over 500 himself.  Do

11  you know how many jury trials they've given people?  That

12  would be zero, Your Honor.  That would be zero.  And I'm told

13  anecdotally from lawyers down there that there's no way for

14  them to try them.  Because the population there is 4000

15  people; 2000 of them are in jail, in the jail facility.  So

16  they don't have enough jurors to try these cases.

17      So in effect what's happening here is they've -- shocking

18  the conscience -- they've created what I consider the perfect

19  crime.  They write these tickets on a local ordinance so there

20  aren't points.  People, many of them, don't have the resources

21  to get a lawyer.  They're all out of state, because they're

22  going up and down I-95.  They get this ticket in the mail, I

23  mean, you know, talking about a class action, this is one

24  of --

25          THE COURT:  I thought one of your plaintiffs was from

Gaffney or somewhere in South Carolina.

MR. PACELLA: Well, one -- they're all outside the jurisdiction of the Town. We excluded that. So I mean, this thing has just -- it is a for profit operation; we've alleged that in our complaint; if we're wrong about that, if they say it's for safety, let's get an expert and let's have a Daubert hearing about that. I don't think that's the case. But we've alleged that. We've alleged that there's no process at the end of the day in a court that complies with any kind of rules to come up with any kind of determination. We want to amend our complaint to allege they're not giving any of these people jury trials that are part of this class.

THE COURT: That's an amendment that you haven't even filed yet.

MR. STROM: Yes, sir, but we were going to ask. We just learned about this last night, that's right. But those are the issues that shock the -- that should, I hope, shock the conscience of the Court.

And the other standing issue here is all of this is repeatable. Everybody that's a plaintiff of ours, no matter which one of these categories you put them in, they're going to ride down I-95 and be subject to the same thing again. So if they're -- you know, we've got other causes of action listed in here, and that's why all of these people continue to have standing just on that narrow issue, no matter which one

1  of the categories you put them in.

2        THE COURT:  You take the position they can ride up

3  and down 95 at 85 miles an hour all they want to.

4        MR. STROM:  No, sir, I take the position that a

5  police officer has to stop you --

6        THE COURT:  I mean, you take --

7        MR. STROM:  -- and serve you with a ticket.

8        THE COURT:  Right there.

9        MR. STROM:  If he's in hot pursue, he can go tree

10  miles outside the jurisdiction.  But I take the position they

11  have to serve you with that ticket, and they have to give you

12  a court date.  And if you post your bond and you don't show

13  up, they have to have some type of established proceeding.

14  Now, I'm not saying that it has to be a trial in absence, but

15  I think that the law in this state is that there has to be

16  some established proceeding as to how they handle those cases,

17  other than the girls at 8:00 or 9:00 o'clock at night making

18  some note on a docket.

19    And if they can prove at the summary judgment stage that

20  there is a proceeding in place where there is some uniform

21  compliance as to how they handle that -- We allege in our

22  complaint there's not, because we do not believe that's the

23  case, based on what we have seen and heard.  If they can

24  establish that, then Your Honor's probably right to grant

25  summary judgment against us.

1        But at this point we've pled, we've pled that there is no

2   process, at the end of the day, where they legally forfeit

3   these bonds.  And that's why that first group still has

4   standing.  And we've pled that it is illegal to serve somebody

5   out of state or out of your jurisdiction.

6        You know, those are important points.  And we think we've

7   established enough facts, alleged enough facts in this

8   complaint to allow us to look into this thing further.  You

9   know, we've moved to amend our complaint because we've got a

10  little bit of a Freedom of Information Act.  There's a lot

11  more to dig here.  And we think, Your Honor, that we've

12  alleged enough here to be able to continue to proceed.

13        THE COURT:  Okay.  Thank you.  Anything more y'all

14  want to add?

15        MR. DOMIN:  Mr. Strom covered a lot of territory,

16  went back to the first category.

17        THE COURT:  I don't --

18        MR. DOMIN:  I don't know if you're inclined to go

19  back to that.

20        THE COURT:  No, I don't want to go back.

21        MR. DOMIN:  Okay.  I didn't want to go back that far

22  either, frankly.

23        You know, as it relates to these folks in the third

24  category, I call them the third category, but it's the folks

25  who actually appeared and whose tickets are dismissed, clearly

1  they not only received due process, they availed themselves of

2  it, the tickets were dismissed.

3          THE COURT:  All right, sir.

4     Now we go to the third group who requested a jury trial

5  and are awaiting a jury trial.  Let me hear from you about why

6  I should go in and interfere with a State Court proceeding.

7          MR. PACELLA:  Well, Your Honor, as you heard from

8  Mr. Strom, there haven't been any jury trials to date, and

9  there may not be any jury trials.  These plaintiffs may

10  ultimately fit into the category of the dismissals.  But as

11  they presently stand, Your Honor, they're still victims of the

12  same unconstitutional conduct, the same mail fraud, wire --

13          THE COURT:  But you want me to go in and interfere

14  with a pending state matter, that they can, if they don't get

15  justice, if they don't feel they get justice in Ridgeland,

16  that they can go up the state ladder, and then when they

17  finish, come here maybe.  But you want this Court to interfere

18  with a pending state proceeding.  Isn't that what you're

19  asking me?

20          MR. PACELLA:  No, Your Honor, actually we do not

21  believe we'll ever have that opportunity and they'll ever let

22  us go through state proceeding.

23          THE COURT:  I don't know that, you don't know that.

24          MR. PACELLA:  Well, we've been there twice trying to

25  challenge tickets, and they've dismissed them because they

1    didn't want rulings going up.  I mean, that is clear, I

2    believe is clear, from the two dismissals that we've gotten.

3    We've actually been down there for a third ticket, which was

4    dismissed because it's not in the complaint.

5        But, Your Honor, they still have claims for -- because

6    they may be subject to the same conduct again, so they still

7    have claims for injunctive relief as they've been harmed by

8    the initial --

9            THE COURT:  They can't get relief in State Court?

10           MR. PACELLA:  They cannot get -- the municipal judge

11   cannot give them an injunction to prohibit the Town of

12   Ridgeland and iTraffic from having those cameras on the

13   interstate and serving people tickets.

14           THE COURT:  Well, there's nobody, no court in the

15   state system can do that?

16           MR. PACELLA:  Well, Your Honor, the question of

17   whether this putative class action could have been in State

18   Court is a Class Action Fairness Act question.  The reason why

19   this is filed here is because of the Class Action Fairness

20   Act.

21           THE COURT:  I mean, but you're asking me to go in and

22   interfere with the State Court proceeding.

23           MR. PACELLA:  No, we actually would like those State

24   Court proceedings to go --

25           THE COURT:  I'm talking about in these three cases.

1           MR. PACELLA:  Yes, Your Honor.  We'd actually -- I

2      think the State Court proceeding certainly can go forward.

3      We're not asking you to enjoin those proceedings and not let

4      those proceedings go forward.  We're asking to conduct

5      discovery in this case, and move forward to seek relief for

6      the people who we believe are victims of this enterprise that

7      was generated by the Town of Ridgeland and iTraffic, to make

8      money for their town as town profits, and as corporate profits

9      for iTraffic.  And they've been harmed much in the same way,

10     they had to go out and hire attorneys to adjudicate what is --

11     to adjudicate their claims in municipal court, and they

12     haven't.

13          THE COURT:  Can't they raise all these issues in the

14     State Court?

15          MR. PACELLA:  Certainly, Your Honor, they cannot go

16     in and ask the judge for monetary damages for a RICO claim,

17     they can't ask the judge for monetary damages for their

18     constitutional claims, and they can't ask the judge for any

19     monetary damages.  All they can do is ask the judge to dismiss

20     the case.  And that's the only authority the judge would have

21     is to dismiss the case, if he found it to be a procedural

22     violation.  They can't get any other remedies from the court.

23     And they've been waiting for their trials, been waiting a

24     substantial period of time for their trials.  The chief

25     justice of the South Carolina Supreme Court issued an order

saying that magistrate and municipal offenses need to be tried within 120 days. We've exceeded that. We're still waiting.

At some point, if the case doesn't get called for trial, at some point they have to have right to be able to bring their action to adjudicate their rights. At this point they have pending charges over their head. Pending charges that we contend to be unconstitutional, violate constitutional law, that they've been subjected to injury to their person or property because mail fraud and wire fraud acts that are part of the racketeering conspiracy. And because of that, they should be allowed to adjudicate their rights. And how long they should wait for their jury trial? Wait till the statute of limitations expires? Because the statute of limitations for the unconstitutional arrest, is when they received the ticket. That's when it begins the run. Doesn't begin to run upon the dismissal of the case.

Because what we're challenging is the conduct that is involved in the mailing. So the only other alternative is to wait and see. And if the town officer never calls the case for trial, then our clients never get a chance to adjudicate their rights. That's not a rational conclusion. They have to be able to adjudicate their rights if they've been injured. And they have been injured, they've hired counsel, we've pled it, they hired counsel to represent them in those proceedings.

THE COURT: All right, sir.

1          MR. PACELLA:  Thank you.

2          MR. DOMIN:  This category of plaintiffs has all of

3    their rights to assert whatever they want in a State Court

4    proceeding.  And under Younger and its progeny, this Court

5    should not interfere with any State Court proceedings.

6        Now, I submit respectfully that is exactly what the

7    plaintiffs are asking for you to do.  They're asking for you

8    to make determinations that there was an illegal arrest or

9    that there was illegal processing or that there was some

10   misconduct related to the probable cause in issuing the

11   tickets.  Those are all questions that can be raised in the

12   court of the Municipal Court of the Town of Ridgeland.

13   There's a judge, and that appeal goes all the way on up to

14   Columbia.  They're able to appeal it all the way to the South

15   Carolina Supreme Court, to address any issues that they have

16   regarding all of those issues.  All of those issues, they

17   could raise all the way up to Columbia, if they want.

18       Now, they raise a question as to whether or not jury

19   trial -- if a jury trial is never heard, then what is going to

20   be their right.  Well, you know, ultimately all defendants

21   have a right to make a motion for a speedy trial, or, in the

22   alternative, to dismiss the case.  There's no question that

23   there are a lot of tickets, and there are some backlogs right

24   now.  The chief justice, as was just referenced, Chief Justice

25   Toal came out with an order recently applicable to the

1    Magistrates and Municipal Courts, requesting that we dispose

2    of jury trial Municipal and Magistrate Court offenses within

3    120 days.  And that's going to be very hard, and cases could

4    have to be dismissed ultimately as a result of that order.

5    And those people will then fall into a different category.

6    But, for the sake of discussion, if we're talking about a

7    category of people who have cases pending right now, this

8    Court should not interfere.

9            MR. TEMPLETON:  Ditto.  Judge, exactly.  Younger v.

10   Harris, squarely on point for this category.  In addition,

11   principles of ripeness are applicable for the Court's

12   consideration, because there's a number of what ifs.  You

13   know, what if there's a conviction, what if the jury trial

14   goes forward and there's a conviction, what if there's a jury

15   trial and there's a finding of no fault, no conviction, what

16   if there's a dismissal.  All of those things raise question

17   marks as to whether -- putting Younger aside -- whether these

18   claims are actually ripe for this Court to consider.  As the

19   Court alluded to, perhaps in the future, if the cases

20   matriculate on up to Columbia, depending on how things shake

21   out, there may be something in the future.  But as it stands

22   here today, these defendants have an opportunity to raise any

23   defense they believe to be necessary and applicable.

24           THE COURT:  If they can get a trial.

25           MR. TEMPLETON:  If they can get a trial.  And if they

1  can't get a trial, Mr. Domin's exactly right, motion for

2  speedy trial, and in the alternative, motion for dismissal.

3  Therefore, they're protected that way, and then they fall into

4  the category of defendants that we talked about before.

5      But I would submit, as I did before, in the event that

6  that occurs, the system worked.  Perhaps you could say the

7  system failed because defendants weren't tried in a timely

8  fashion, and, therefore, it's an indictment on the system

9  itself.

10     But what these plaintiffs are asking this Court to do is

11  to declare, because they've asked for a declaratory judgment

12  and injunctive relief, to declare this program is

13  unconstitutional, to declare that the actions of these

14  officers and the Town are unconstitutional, and put a stop to

15  it.  That's the nature of an injunctive relief.  And with due

16  respect to the plaintiffs, that's not the proper forum.

17         THE COURT:  Well, the plaintiff says -- I don't know

18  how many thousand cases pending down there.  He said he wants

19  to further amend his complaint.  I've forgotten the figures,

20  but he says it's impossible to try all those people, with the

21  population down there.  Because the penal institution, which

22  surprised me, I learned about the group in Allendale, they

23  count, for voter purposes, you count the people in these penal

24  institutions.  And Ridgeland has got -- I guess Jasper County

25  has a big influx for that reason.  Now, if they allege the

1    impossibility of or unlikelihood of being able to try them and

2    them getting some decision, I mean, you're taking the position

3    and I'm not saying it's wrong, that this Court shouldn't

4    interfere.  But if this Court were to find that -- and he

5    further amends his complaint, and if this Court were to find

6    that it was impossible, it appeared impossible for these

7    people to get a trial to adjudicate their rights, you don't

8    think that might be conduct that would shock the conscience of

9    the Court?

10             MR. TEMPLETON:  It might, Your Honor.  At this

11   juncture it's the first I heard of it was today's argument on

12   that issue.  No --

13             THE COURT:  It's not before the Court, nothing --

14             MR. TEMPLETON:  Yes.

15             THE COURT:  That's not before the Court now.

16             MR. TEMPLETON:  Certainly if Your Honor allowed the

17   amendment to occur, we would look at that and see if there's a

18   legitimate basis to contest it under an argument of futility

19   or not.  But as we stand here today, it's not before the

20   Court, and I'm not prepared to fully address those questions.

21             THE COURT:  All right, sir.  Anything else you want

22   to add?

23             MR. TEMPLETON:  No, Your Honor, thank you.

24             THE COURT:  Anything you want to add in reply?

25             MR. PACELLA:  No, sir, not on this issue.

1          THE COURT:  Let's take about a ten- or 15-minute

2     break.  Let me think about this.

3          (A recess was held at this time.)

4          THE COURT:  I've given this -- gave it a lot of

5     consideration before I came today, and I'd been over the

6     briefs.  And I think the law might be different, or some of

7     the law might be different as to the third group.  And as to

8     the first two -- first, I don't believe that it's any

9     constitutional violation to send somebody a ticket and give

10    them the information they were given.  That would apply to all

11    three groups.

12         Now, I think that the first group, I believe that they

13    violated the traffic laws of the state, and that the state law

14    provides for a person who violates the traffic law and

15    forfeits his bond, I don't think there's any constitutional

16    requirement that you've got to hold a special kind of

17    forfeiture procedure.

18         And I think that the first group, the only way, even if it

19    was a constitutional violation to send them a ticket notice

20    the way they did, they couldn't contest it until having been

21    found -- state law making them guilty, equivalent of a guilty

22    plea.  I think until they got that guilty plea set aside, they

23    couldn't come into this court, because I think that the Court

24    would not be -- wouldn't act -- I don't think it's a

25    constitutional violation to start with, but if it were as to

1  the first group, since they were, on the face of the matter,

2  legally pled guilty, I think they'd have to do something to

3  get their guilty plea set aside before they could come into

4  this court.

5      Since I don't feel that there was a constitutional

6  violation, I think the second group, just as their case has

7  been dismissed, and I think that's as far as this court need

8  go with that.

9      Now, the third group, while I don't think there was a

10 constitutional violation, I can see that under some of the

11 statements that have been made, I'm going to allow the

12 plaintiffs 20 days, or however long they want, to further

13 amend the complaint.  I could see that -- without giving -- I

14 want to give them a chance.  I could see -- I'm not passing on

15 it because it's not before me -- but I could see if they make

16 some allegation, and I'm just using the words that there are

17 4000 cases down there ready to be disposed of, and the

18 impossibility of getting a trial, some allegations like that

19 may create a constitutional violation.  I could see those

20 people who couldn't get a trial, and then refuse trials.

21     So I'm going to allow the plaintiff to -- How long do you

22 want?  You said you wanted to amend your complaint; how long

23 do you want?  I'll give you all the time you want, you just

24 tell me.

25          MR. PACELLA:  Your Honor, just ask for 30 days

1    instead of 20 days.

2          THE COURT:  All right.  Then I'll give y'all 30 days

3    to file any motions you want to file.  But I just don't

4    believe that sending -- that there's any constitutional

5    violation that this Court should recognize from the fact that

6    the officer didn't stop them right there and give them a

7    ticket, rather than mailing -- sending the notices out that

8    they send.

9          And insofar as the first group is concerned, before they

10   could challenge that, even if it was, and I don't think it

11   was, but even if it was, since I think they clearly fit the

12   statutory state statute that they violated the traffic laws of

13   the state, and that they forfeited their bond, and that

14   amounts to a plea of guilty, and when you plead guilty, you

15   waive all your constitutional rights.  You waive all your

16   rights.  So they'd have to get that -- even if it was a

17   constitutional violation, they've waived that, as long as that

18   conviction is standing.  So I think that applies to the first

19   group; they've got two hurdles.  I mean they had two hurdles.

20   One, was it a constitutional violation, and two, did they

21   violate the state traffic law.  And I said I don't think it

22   was a constitutional violation, and second, I think they did

23   violate the state traffic laws, and they had the equivalent of

24   a guilty plea, and that they waived all their rights.

25         As I said, the second group, if it was no constitutional

violation, then they've had the charges against them dismissed, and they've reached the end of the rope at the present, as alleged presently.

And as to the third group, as the pleadings stand now, I don't see that they've had a constitutional violation any more than the other two. But there may be factors that the plaintiff can allege from the argument, that might change that picture, depending on what is in the complaint. And I think it only fair, since this is not an old case, that the plaintiff be given an opportunity to amend the complaint as to that group. Now, I don't think anybody -- I don't know if there are others who have gone down there and had their complaints dismissed. I believe you did mention one other, I thought you said you appeared one other time and had the complaint dismissed. Didn't you say that?

MR. PACELLA: Yes, sir.

THE COURT: I thought so. And I don't know, must be hundreds, I guess, who forfeited their bond. And they've got two hurdles to overcome, as I said. Now, they've got the first hurdle of proving it was a constitutional violation, which I don't think it was. But even if they were correct in that, then they've got to overcome my holding that they didn't violate the state traffic law to make that guilty plea -- I mean the forfeiture amount to a guilty plea. Because if the forfeiture amounts to a guilty plea, and then you take the --

1   with a guilty plea, you waive -- or I tell everybody who comes

2   up all the time, if I accept your guilty plea, you waive all

3   your constitutional rights.  So even if they had them, they

4   would waive them with a guilty plea.  So they've got to

5   overcome that statute, or the statutory law of the state, plus

6   your constitutional violation.  Now, I don't think they can do

7   either.

8       And I'll just wait to see as to the third group.  I don't

9   think they've alleged a constitutional violation to date.  But

10  I don't know what they're going to allege in 30 days.  So I'm

11  not going to issue any order any time that's going to confirm

12  in an order what I've stated and the reasons.

13      Now, is there any question, based on what I've said, that

14  any of you have for the Court?

15          MR. PACELLA:  Your Honor, just to be clear.

16          THE COURT:  If you don't mind, come up here.

17          MR. PACELLA:  Yes, sir.  Yes, Your Honor, this is

18  more procedural to make sure I understand procedurally.  The

19  first three plaintiffs are being dismissed?

20          THE COURT:  That's right.

21          MR. PACELLA:  The two plaintiffs that had their cases

22  adjudicated and dismissed by the Municipal Court, their motion

23  to be included in the complaint is denied?

24          THE COURT:  That's right.

25          MR. PACELLA:  Okay.  I just wanted to make sure.

1    Because they've never been a party to the action.

2            THE COURT:  That's right.

3            MR. PACELLA:  Thank you, sir.

4            THE COURT:  But the last three, I'm going wait to

5    pass on their claims until I see the amended complaint and the

6    pleadings to that.

7            MR. PACELLA:  Yes, sir.

8            THE COURT:  Okay.  Anything from y'all?

9            MR. DOMIN:  No, Your Honor.

10           MR. TEMPLETON:  No, Your Honor.

11           THE COURT:  We'll be in recess then.

12

13       (Court adjourned at 12:36 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                       REPORTER'S CERTIFICATION

2


3              I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4     Reporter for the United States District Court for the District

5     of South Carolina, hereby certify that the foregoing is a true

6     and correct transcript of the electronically recorded above

7     proceedings, to the best of my ability.

8


9


10
      S/Debra L. Potocki
11    _____

12    Debra L. Potocki, RMR, RDR, CRR

13


14


15


16


17


18


19


20


21


22


23


24


25